**UNITED STATES of America**

v.

**John DOE.**

**Cr. No. 75–91.**

United States District Court,
D. Rhode Island.

Aug. 8, 1980.

James E. O'Neil, Asst. U. S. Atty., Providence, R. I., for plaintiff.

Alton W. Wiley, Providence, R. I., for defendant.

## OPINION

PETTINE, Chief Judge.

On January 28, 1976, the movant, then 24 years old, pleaded guilty to a narcotics offense, and sentence to confinement was imposed under the Federal Youth Corrections Act (FYCA), 18 U.S.C. § 5010(b) as extended by 18 U.S.C. § 4209. After commitment to the Federal Correctional Institution at Morgantown, West Virginia, he was paroled on June 15, 1977; on February 28, 1979 he was unconditionally discharged from parole and the conviction was "set aside" pursuant to 18 U.S.C. § 5021(b); a certificate was issued accordingly. He now seeks expungement of all records relating to the "set aside" conviction under § 5021 of the FYCA.[1]

---

1. § 5021. Certificate setting aside conviction

(a) Upon the unconditional discharge by the division of a committed youth offender before the expiration of the maximum sentence imposed upon him, the conviction shall be automatically set aside and the division shall issue to the youth offender a certificate to that effect.

(b) Where a youth offender has been placed on probation by the court, the court

The legal effect of the Federal Youth Corrections Act "set," provision, 18 U.S.C. § 5021(a) and (b), has been the subject of a plethora of legal opinions expressing contrasting viewpoints. This is quite understandable since it is no overstatement to say that the language of § 5021 is no model of clarity.

Four questions are raised in connection with the Act's "set aside" conviction.[2]

(1) does § 5021 remove the conviction for purposes of federal criminal statutes predicated upon a prior felony conviction;

(2) does § 5021 implicitly authorize a youth to give a "No" response to an inquiry about whether he has been convicted;

(3) does § 5021 implicitly entitle a youth, as an automatic consequence of having his conviction "set aside", to expunction of the conviction;

(4) does § 5021, in conjunction with the equitable power of a district court, authorize the court to expunge or seal a "set aside" conviction?

■ The First Circuit Court of Appeals disposed of the first inquiry in *Morera v. United States Immigration and Naturalization Service*, 462 F.2d 1030 (1972), by holding that a conviction which had been set aside under the FYCA is not a conviction for purposes of deportation. The court said:

> The clear purpose for the automatic setting aside of a youthful offender's conviction if he responds satisfactorily to treatment under the Youth Correction Act is to relieve him not only of the usual disabilities of a criminal conviction, but also to give him a second chance free of a record tainted by such a conviction. *See* U.S. Code Congressional Service, 81st

Cong., 2d Sess., pp. 3391–3392 (1950). We cannot imagine a more complete deprivation of a second chance than deportation. We are unable to presume that Congress, without any reference to such an intent, meant in section 5021 to provide for setting aside a conviction for some purposes but not for others.

*Id.* at 1032.

*See Rehman v. Immigration and Naturalization Service*, 544 F.2d 71, 74 (2d Cir. 1976); *United States v. Purgason*, 565 F.2d 1279 (4th Cir. 1977); *United States v. Fryer*, 545 F.2d 11 (6th Cir. 1976); *United States v. Maggard*, 573 F.2d 926 (6th Cir. 1978).

The remaining questions set forth above have been effectively treated by the D.C. Circuit in the scholarly and exhaustive opinion of *Doe v. Webster*, 606 F.2d 1226 (D.C. Cir.1979). The court found that the FYCA authorizes expunction of the conviction records and that upon receipt of a court order setting aside a conviction, issued pursuant to the Act, the records had to "be physically removed from the central criminal files and placed in a separate storage facility not to be opened other than in the course of a bona fide criminal investigation by law enforcement authorities and where necessary for such an investigation." It went on to say, "These records may not be used by appellees for any other purpose, nor may they be disseminated to anyone, public or private, for any other purpose." *Id.* at 1244.

The court also ruled that:

> Once notified of the entry of a set-aside order, appellees and their agents will be required to respond in the negative to any and all inquiries concerning the set-

---

may thereafter, in its discretion, unconditionally discharge such youth offender from probation prior to the expiration of the maximum period of probation theretofore fixed by the court, which discharge shall automatically set aside the conviction, and the court shall issue to the youth offender a certificate to that effect.

**2.** The General Counsel's Office of the Administrative Office of the United States Courts filed an Amicus Curiae brief in *United States v. Henderson*, 482 F.Supp. 234 (D.N.J.1979), which case involved the identical issue as here. The government agreed that this court could accept said brief for this case. In addition, the government submitted to this court a paper, "Looking at the Law", authored by Judd D. Kutcher, Assistant General Counsel, Administrative Office of the United States Courts. These issues were raised by Mr. Kutcher.

aside conviction. Similarly, the ex-offender whose conviction is or has been set aside under section 5021, may legally reply in the negative to any and all questions concerning his former conviction. *Id.* at 1244.

■ I was impressed with Judge Greene's opinion, writing for the court in *Doe v. Webster*; I agree with its reasoning and adopt its findings and conclusions as set forth above. However, the *Webster* court also held that neither the plain language of the statute nor the legislative history supports the argument that the FYCA authorizes expungement of the arrest record; that though the Act provides for setting aside a conviction, it makes no reference to an arrest. While *Webster* recognized that courts have exercised their equitable powers to expunge arrest records, it noted that this power was very restricted by precedent; it pointed out that all the cases "involved either a lack of probable cause coupled with special circumstances, flagrant violations of the Constitution or other unusual and extraordinary circumstances," and concluded:

> The general rule which emerges from the cases is that expungement of an arrest record is appropriate when serious governmental misbehavior leading to the arrest, or unusually substantial harm to the defendant not in any way attributable to him, outweighs the government's need for a record of the arrest.
>
> Inasmuch as no unusual or exceptional circumstances are alleged here, whether by way of governmental misconduct or otherwise, and as there is apparently no question but that appellant was properly arrested and convicted, his arrest fails to meet that general test. Even individuals who were never convicted are not entitled to the expungement of their arrest records as a matter of course, and absent specific statutory authority it would be wholly inappropriate to order such an expungement in a case such as this where there has been not only a valid arrest but a valid conviction.

For these reasons, we conclude that the government is entitled to retain the record of appellant's arrest in its appropriate files.

*Doe v. Webster, supra*, at 1231.

■ With all due respect to my learned brother, I am of a different view. I quite agree with the petitioner that the legislators intended that § 5021 of Title 18 implicitly authorize and require expungement of a youth's arrest records; I also agree that the court has inherent power to expunge a youth's arrest record, where as here, expungement would further the purposes of the Federal Youth Corrections Act.

There is no question that the conviction set-aside was intended by the legislators to free the youth offender from the yoke of a "conviction" and give to him a *tabula rasa* to write upon anew, free of any stain or stigma. Such a laudable goal is futile and unrealistic unless expungement includes the arrest record.

It appears to me that the broad concept of the FYCA is manifest from the legislative history, cited by the *Webster* court itself:

> . . . [T]he judicial drafters of the Act again and again emphasized that, in the words of Chief Judge Bolitha J. Laws of the United States District Court for the District of Columbia, a primary purpose of the proposed statute was to ensure that "committed youth offenders who earn their final discharge before the end of their maximum term have their *records* cleared and all their civil rights restored." . . . To that end, Judge Laws noted with approval that "when the [Youth Correction] Division turns them out ahead of their maximum sentence, this law blots out their sentence and lets them go *without any stigma* on their life." . . .
>
> ". . . [T]he Act does provide for the wiping out of the *conviction* if the youth is discharged, rehabilitated, and behaves himself well after his period of supervision. The purpose of that is to help him get a job and keep him from having to be turned down by a prospective employer

because of the fact that he has a conviction." . . . "[O]ne feature in this bill which is very salutory and that is if the youth offender is reclaimed . . , they can strike out the sentence imposed on him and completely *set aside his conviction* so that he will *not have a criminal record* staring him in the face." (emphasis added)

*Doe v. Webster, supra,* at 1235–1236 (testimony at the Senate hearings on the FYCA bill).

From these expressions, the fungible use of the words "conviction" and "record" is obvious; therefore, the meaning to be imputed to the precise language of the Act— "set aside the conviction"—places squarely before the Court a question of legislative intent.

To start with, a definition of "conviction" must be established. It is certainly not subject to one connotation; it may be used in a more or less comprehensive sense. *See,* Black's Law Dictionary; ". . . what constitutes a 'conviction' varies among jurisdictions. . . ." *United States v. Cody,* 529 F.2d 564, 566 n.3 (8th Cir. 1976); "Its implications in a given case are to be determined from the connection in which it is used." *United States v.Rosenstengel,* 323 F.Supp. 499, 501 (E.D.Mo.1971). As I read the testimony in the legislative history and consider the purposes for the enactment of the Act itself, I conclude that the legislators intended a comprehensive definition, encompassing the entire slate from arrest to sentencing.

I submit this is the only interpretation that can give any meaning to the Act. For example, one of the purposes of the Act, cited *supra,* was "to help him get a job and keep him from having to be turned down by a prospective employer. . . ." As to this, it cannot be denied that an arrest record can have a devastating effect on securing employment. True, it may be argued that the statements set forth above were solicited comments on an already drafted bill and therefore have little value as an insight to the intent of the legislators. However, the general purpose of the Act, to fully rehabilitate the youth, is clear; it is equally clear that rehabilitation must carry with it a fair chance of employment. Clearly, this chance does not exist so long as an arrest record is readily available to a prospective employer. *Webster* points out that only eleven percent of employers would hire persons convicted of assault and that the percentage only rose to 33 in cases of acquittal. I cannot conclude a conviction removal would be effective absent the same treatment of the arrest record. In short, a court's failure to "expunge" arrest records in cases such as this one will deprive the petitioner of the very advantage he acquires by the set-aside of the conviction record.

It has been observed that "[i]n reality, the easy access afforded to the ex-offender's arrest records will have virtually the same effect on employment opportunities as would conviction records. Indeed, 75% of the employment agencies in New York City will not refer someone who has an arrest record. . . . The impact of arrest records on employment opportunities, therefore, is just as serious as that of conviction records." Note, The Expunction of Criminal Records Under The Federal Youth Corrections Act, 26 Wayne Law Review 1111, 1123 (1980).

I find that the legislators never intended to draw a distinction as to arrest records. Their prime concern was to rehabilitate the young offender and to treat him differently from other individuals who were convicted of crimes but not entitled to the expungement of their records. As counsel ably argues, "What matters here is that Congress clearly wanted a youth to have a fresh start; which is only obtainable if 'conviction' is understood in its more comprehensive sense. That view is supported by the fact that retention of arrest records serves no legitimate government purpose where a non-public record of the conviction record is maintained by the Department of Justice. The only impact retention of such records would have would be to jeopardize a youth's chances." Amicus brief at 5. I find this argument irrefutable.

### Equitable Power of the Court

There is no doubt the court has inherent powers to expunge records in certain cases absent statutory power. These have been classified as rare cases, as well as those involving "either a lack of probable cause coupled with special circumstances, flagrant violations of the Constitution, or other unusual and extraordinary circumstances." *Webster, supra.* Convictions under the FYCA will seldom, if ever, fall afoul of this standard because such unusual circumstances are unlikely to be present in a § 5021 set-aside case—which ordinarily involves a lawful and proper arrest, conviction and sentence. However, this does not mean equitable principles cannot be applied as an alternative rationale justifying set-aside of an arrest record. The broad principles of equity are not so restrictive as the *Webster* court holds, *i. e.,* merely to right a wrong; the essence of equity is to do complete justice and give effect to the special circumstances of a case; here, it must be to carry out the aim and purposes of the FYCA in a way not inconsistent with the intent of the legislators. I find this can only be accomplished by expunging the arrest record at least in the same manner as the conviction.

In keeping with this opinion, it is hereby *ORDERED*

■ 1. Once a district court issues its order setting aside a conviction under section 5021 and transmits that order to the Federal Bureau of Investigation, it will not be sufficient for the Identification Division of that Bureau merely to enter the words "set aside" on its records. The set-aside must be actual: the conviction records and the arrest records must be physically removed from the central criminal files and placed in a separate storage facility not to be opened other than in the course of a bona fide criminal investigation by law enforcement authorities and where necessary for such an investigation. These records may not be used by the government for any other purpose, nor may they be disseminat-

ed to anyone, public or private, for any other purpose.

 2. Once notified of the entry of a set-aside order, the government and its agents will be required to respond in the negative to any and all inquiries concerning the set-aside conviction and arrest records. Similarly, the ex-offender whose conviction and arrest record is or has been set aside under section 5021, may legally reply in the negative to any and all questions concerning his former conviction and arrest.[3]

---

**3.** The wording of this order was taken from *Doe v. Webster, supra*, at 1244, excepting as to

that portion pertaining to arrest records.