**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Thomas Alan SUMNER, Defendant– Appellant.**

**No. 99–10523.**

United States Court of Appeals, Ninth Circuit.

Submitted Aug. 11, 2000 [1]

Filed Sept. 12, 2000

Fed. R.App. P. 34(a)(2)(C).

Ann H. Voris, Assistant Federal Defender, Fresno, California, for the defendant-appellant.

Virna L. Santos, Assistant United States Attorney, Fresno, California, for the plaintiff-appellee.

Before: ALARCON, O'SCANNLAIN, and GOULD, Circuit Judges.

ALARCON, Circuit Judge:

Thomas Alan Sumner appeals from the order of the district court denying his motion to expunge his twenty-six-year-old

conviction for the unlawful possession of narcotics and to order the Government to remove all records of his arrest and conviction from its central files. The district court denied the motion after concluding that Sumner did not satisfy the criteria for having his criminal record expunged under the Federal Youth Corrections Act (the "FYCA"), 18 U.S.C. § 5010(a),[2] and that it lacked jurisdiction to expunge his record. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We affirm, because we conclude that the district court correctly determined that it lacked jurisdiction to consider the merits of Sumner's motion.

## I

On April 28, 1972, Sumner was arrested in Yosemite National Park after his companions sold narcotics to an undercover ranger for the United States Forest Service. He was charged in the United States District Court for the Eastern District of California with the unlawful possession of a controlled substance under 21 U.S.C. § 844(a). He entered a guilty plea to the charge on October 30, 1972, and was sentenced under the FYCA. The district court ordered Sumner to serve a 90–day term of probation and to pay a fine of $100. Sumner failed to pay the fine within the prescribed time period, and a bench warrant was issued for his arrest. Sumner paid the fine two days after the deadline had passed, and the bench warrant was immediately recalled.

On October 4, 1999, twenty-six years after his conviction, Sumner filed a motion in the same criminal case to have his conviction expunged and to have all records of his arrest and conviction physically removed from the Government's central files. He is currently employed as a substitute teacher and wishes to become certified to teach students in Nevada on a permanent

basis. He currently lives under the disabilities associated with a criminal record, and he fears that the record of his arrest and conviction will preclude him from obtaining the requisite teaching credentials.[3]

In his motion, Sumner argued that the district court should expunge his criminal record under the "set aside" provision of the FYCA. In the alternative, he argued that the district court could expunge his record under its "inherent powers under equitable principles." The district court denied Sumner's request from the bench during a hearing on the motion and subsequently issued a written order denying the motion. The transcript of the hearing reads as follows:

> THE COURT: The court is satisfied that I don't have jurisdiction or the ability to expunge the record. So the request is denied. But with that on the record, if you take it to the appellate court and they find that I do have the power to do it, they can change that decision.
>
> [COUNSEL:] Your Honor, does the court believe that it does not have the jurisdiction to set it aside *nunc pro tunc* to the time that the fine was paid?
>
> THE COURT: Right.

The written order states:

> The court determined that it would not order expunction under the theory that it was within its inherent equitable powers to do so, and thus is without jurisdiction to grant the relief requested.
>
> At the hearing, counsel moved the court to issue a certificate to set aside the conviction under 18 U.S.C. § 5021(b), *nunc pro tunc*. Because [Sumner] was

---

2. The FYCA, under which Sumner was originally sentenced, was repealed by Congress in 1984. *See* Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, § 218(a)(8) (Oct. 12, 1984).

3. The record does not indicate whether Nevada law would in fact prohibit Sumner from becoming certified to teach on a permanent basis due to his arrest and conviction for the possession of narcotics in 1972.

not discharged from probation prior to serving the maximum period of probation, he did not satisfy the criteria for issuance of the certificate. Therefore, the court denies the request for issuance of the certificate *nunc pro tunc.*

We interpret these statements as indicating that the district court denied Sumner's motion to expunge the record of his arrest and conviction, because it concluded that it lacked jurisdiction to do so.

 Sumner contends that the district court had jurisdiction under the FYCA, or under its "inherent power under equitable principles," to grant the motion to expunge his conviction and to have the record of his arrest and conviction removed from the Government's central files. "As courts of limited jurisdiction, our power to adjudicate claims is limited to that granted by Congress, and such grants are not to be lightly inferred." *Al Nieto v. Ecker,* 845 F.2d 868, 871 (9th Cir.1988). We review de novo the question whether the district court possessed the jurisdiction to grant Sumner's motion. *See Hexom v. Oregon Dep't of Transp.,* 177 F.3d 1134, 1135 (9th Cir.1999).

## II

 The FYCA expressly allows youthful offenders who are sentenced to probation to have their convictions automatically "set aside" where the district court grants an unconditional discharge from probation *"prior to the expiration of the maximum period of probation ...* fixed by the court."[4] *See* 18 U.S.C. § 5021(b) (1972) (emphasis added). It also gives a district court limited jurisdiction to exercise its discretion retroactively to grant an early unconditional discharge and to set aside a conviction after the completion of the probationary period. *See Tuten*

*v. United States,* 460 U.S. 660, 668, 103 S.Ct. 1412, 75 L.Ed.2d 359 (1983). That jurisdiction, however, has only been extended to those circumstances in which the failure to grant an early unconditional discharge from probation was due to an *oversight* by the district court. *See id.; see, e.g., United States v. Fryer,* 545 F.2d 11, 13 n. 3 (6th Cir.1976) (involving the failure to grant an early unconditional discharge from probation due to a clerical error).

In the present case, the record does not indicate that Sumner received an early unconditional discharge from probation, or that he failed to receive one due to an oversight. In fact, it indicates that the opposite is true. Sumner did not present evidence to the district court or even allege that his probation officer failed "to file a report evaluating [Sumner's] conduct and progress and reminding the court that an early unconditional discharge will automatically set aside the conviction." *Tuten,* 460 U.S. at 668 n. 12, 103 S.Ct. 1412. The record also reflects that the district court set aside the conviction of one of Sumner's codefendants during the probationary period. If anything, the record supports the conclusion that the district court's failure to exercise its jurisdiction to set aside Sumner's conviction during the probationary period was conscious, and that it resulted from Sumner's failure to comply with a condition of his sentence requiring the payment of a fine during the term of probation.

 We decline to extend the circumstances in which a district court may exercise its jurisdiction and grant a motion to set aside a conviction retroactively under the FYCA to include those presented by this case. "*Nunc pro tunc* amendments are permitted primarily so that errors in the record may be corrected. The power

---

4. The FYCA provides in pertinent part:
 Where a youth offender has been placed on probation by the court, the court may thereafter, in its discretion, unconditionally discharge such youth offender from probation prior to the expiration of the maximum period of probation theretofore fixed by the court, which discharge shall automatically set aside the conviction, and the court shall issue to the youth offender a certificate to that effect.
 18 U.S.C. § 5021(b) (1972).

to amend *nunc pro tunc* is a limited one, and may be used only where necessary to correct a clear mistake and prevent injustice." *Martin v. Henley,* 452 F.2d 295, 299 (9th Cir.1971). It does not imply the ability to alter the substance of that which actually transpired or to backdate events to serve some other purpose. *See Kusay v. United States,* 62 F.3d 192, 193 (7th Cir.1995). Rather, its use is limited to making the record reflect what the district court actually intended to do at an earlier date, but which it did not sufficiently express or did not accomplish due to some error or inadvertence. *See Fierro v. Reno,* 217 F.3d 1, 4–5 (1st Cir.2000).

 Limiting the retroactive applicability of the FYCA set aside provision to those cases in which the district court inadvertently failed to grant an early unconditional discharge from probation is also consistent with legislative intent. The purpose of the FYCA set aside provision was not to guarantee all youthful offenders a clean slate. Rather, it was designed to provide them with an incentive to make the most of their period of probation or confinement. *See Dorszynski v. United States,* 418 U.S. 424, 434–35, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974) (describing the discretion to set aside a conviction as a "powerful tool"). "The incentive might be significantly weaker if convictions were set aside regardless of whether the youth offender, by his conduct during the probationary period, had convinced the sentencing court to discharge him before the expiration of his probationary term." *Tuten,* 460 U.S. at 667, 103 S.Ct. 1412. The policy underlying the statute, therefore, is best served by limiting the circumstances in which a conviction may be set aside to those in which the district court either granted an early unconditional discharge during the probationary period or would have done so but for an oversight. Because Sumner has not demonstrated that the district court's failure to set aside his conviction during the probationary period was the

result of a mere oversight, we hold that the FYCA did not confer jurisdiction upon the district court to set aside his conviction after the probationary period had expired.

### III

 Sumner also maintains that federal courts have "the inherent power, under equitable principles, to order expungement of criminal records." We disagree. The power of federal courts may not be expanded by judicial decree. *See Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). "For a federal court to have subject matter jurisdiction to hear an independent action there must be some statutory or constitutional basis for its jurisdiction." *In re Hunter,* 66 F.3d 1002, 1005 (9th Cir.1995). The burden of establishing this jurisdiction is on the party asserting that a cause is within the court's power to act. *Kokkonen,* 511 U.S. at 377, 114 S.Ct. 1673.

In *United States v. Smith,* 940 F.2d 395 (9th Cir.1991), we vacated the district court's order expunging the defendant's criminal record. *Id.* at 396. We noted that "[t]he district court believed that under its inherent equitable powers it could expunge all record of Smith's felony convictions, without any finding or allegation that the convictions were unconstitutional or in violation of statutory authority." *Id.* at 395. We also observed, however, that "there was no statutory authority for the district court's expunction order." *Id.* at 396. Citing *Maurer v. Los Angeles County Sheriff's Dept.,* 691 F.2d 434, 437 (9th Cir.1982), we further pointed out that criminal records "involving unconstitutional state convictions" may be expunged in a civil rights action filed pursuant to 42 U.S.C. §§ 1983 and 1985. *Id.*

We assumed in *Smith* "for purposes of our decision* that district courts have the same power over federal convictions." *Id.* (emphasis added). While we acknowledged that other circuits had "recognized an equitable power to expunge" a criminal

record, we observed that each had concluded that it was "appropriately used only in extreme circumstances." *See id.* We stated in *Smith* that "we [were] presented with none of the recognized circumstances supporting expunction." *Id.* We explained that "[t]here [was] no suggestion that Smith's arrest or conviction was in any way unlawful or invalid, or that the government engaged in any sort of misconduct." *Id.* We also concluded that the fact that the harms that would befall the appellant "including disbarment and a possible prohibition against reenlistment" in the United States Army Reserves were "the natural and intended collateral consequences of having been convicted." *Id.* We reasoned that "[w]ere we to deem [disbarment and a possible prohibition against reenlistment in the United States Army Reserves] to outweigh the government's interest in maintaining criminal records, expunction would no longer be the narrow, extraordinary exception, but a generally available remedy." *Id.*

Sumner has cited three district court decisions in support of his contention that a district court has inherent equitable jurisdiction to expunge records of arrest and conviction in the absence of proof that the judgment and sentence were tainted by illegality. In each of these cases, however, the district court did not cite any statutory authority apart from the FYCA that would empower a federal court to exercise equitable jurisdiction in a criminal proceeding after the judgment is entered and the time for appeal has expired.

In *United States v. Vasquez,* 74 F.Supp.2d 964 (S.D.Cal.1999), the defendant filed a motion to expunge a misdemeanor conviction six years after she entered a guilty plea. *Id.* at 965. She asked the district court "to invoke its 'inherent equitable powers' to expunge the record of her arrest and conviction." *Id.* In its opposition to the motion, the Government conceded that the court had the inherent equitable power to grant the relief sought. The district court stated that "it is an open

question in the Ninth Circuit" whether a district court has the jurisdiction to order expungement of a record of arrest and conviction. *Id.* The court also noted that other circuits have held that a district court has the power to expunge criminal records "as a matter ancillary to the underlying criminal action." *Id.* at 965–66 (citing *United States v. Schnitzer,* 567 F.2d 536, 538 (2d Cir.1977) and *United States v. Linn,* 513 F.2d 925, 927 (10th Cir.1975)). The district court, however, considered the merits of the plaintiff's claim for equitable relief, "[i]n light of the [G]overnment's concession of jurisdiction." *Id.* at 966. In denying the motion, the court held that the defendant had failed to demonstrate that her conviction was "improperly entered" or "otherwise invalid." *Id.* at 968. The court commented that the fact that "she will continue to experience hardship in obtaining and maintaining employment" was an "unfortunate consequence" of her lawful conviction. *Id.* Because the court based its decision on a concession of jurisdiction, we regard these statements as mere dicta.

In *Doe v. United States,* 964 F.Supp. 1429 (S.D.Cal.1997), the plaintiff pled guilty to the federal crime of failing to pay a special tax on imported marijuana. *Id.* at 1431. He was sentenced to a three-year term of probation under the FYCA as a youthful offender. *See id.* at 1431. Twenty-six years later, Doe filed an ex parte motion in the district court to expunge the record of his arrest and conviction. The motion bore the same number as the original criminal case. *See id.* The district court "declined to entertain the motion because the case had been long terminated." *Id.* The plaintiff then filed a *civil* action against the United States seeking declaratory and injunctive relief. *See id.* The Government moved to dismiss the complaint on the ground that the district court lacked jurisdiction, because there was no statutory waiver of sovereign immunity permitting the action against the United States. *See id.* at 1432. The district court noted that the Government did

*not* argue that the court lacked the power to expunge the records at issue, but rather that the United States was not the proper party to sue. *See id.* In denying the Government's motion to dismiss the action, the court held that it had jurisdiction to consider the merits "in the interests of equity." *Id.*

This matter clearly is distinguishable from *Doe.* Here, Sumner attempted to in-voke inherent equitable jurisdiction in a criminal action after the court's judgment had become final, and he made no showing of illegality. Sumner did not file a new civil action seeking declaratory and equitable relief. Thus, we need not decide whether a plaintiff can bring a civil action for the expungement of criminal records against the United States or individual federal officers as is now available in a § 1983 action against state actors. *See Maurer,* 691 F.2d at 437; *Shipp v. Todd,* 568 F.2d 133, 134 (9th Cir.1978).

Sumner's reliance on *United States v. Doe,* 496 F.Supp. 650 (D.R.I.1980) ("*Doe II*"), is also misplaced. In that case, the defendant filed a motion to expunge the record of his arrest and conviction after the conviction had been set aside pursuant to the FYCA. The district court held that "the legislators intended that [the FYCA] implicitly authorize and require expungement of a youth's arrest records." *Id.* at 653. Here, unlike the situation in *Doe II,* Sumner did not make a timely motion to set aside his conviction pursuant to the FYCA, and he has failed to demonstrate that the district court's failure to grant an

early unconditional discharge from probation was due to an oversight. The district court also opined in dictum that it had inherent equitable jurisdiction to grant the requested relief. *See id.* at 655. For the reasons stated below, we disagree with such a conclusion.

 Federal appellate courts have upheld the remedy of expunction of criminal records under statutes providing for equitable relief or authorizing the correction of a criminal record. A district court has the power to expunge a criminal record under the Civil Rights Act,[5] the habeas corpus statutes,[6] the statutory preservation under the All Writs Act of a district court's authority to issue a writ of error *coram nobis*[7] to correct an unlawful conviction, or the Constitution itself.[8] Congress has also enacted statutes that expressly authorize a district court to order expungement or to correct an inaccurate government record,[9] and it has provided federal courts with limited jurisdiction to grant a new trial,[10] to correct a sentence,[11] or to reduce a sentence to reflect the assistance that a defendant has given the Government.[12]

Sumner did not seek expungement under any of these statutes or rules, or directly under the Constitution. Rather, he filed a motion in the district court under the case number assigned to his original offense. The matter was assigned to the same judge who accepted his guilty plea and sentenced him for his criminal conduct. At the time of Sumner's original conviction, 18 U.S.C. § 3231 provided the

---

5. *See* 42 U.S.C. §§ 1971, 1983, 1985; *see, e.g., Maurer,* 691 F.2d at 437; *Shipp,* 568 F.2d at 134; *United States v. McLeod,* 385 F.2d 734, 738–39, 749–50 (5th Cir.1967).

6. *See* 28 U.S.C. §§ 2254, 2255; *see, e.g., Bromley v. Crisp,* 561 F.2d 1351, 1354, 1364 (10th Cir.1977); *Woodall v. Pettibone,* 465 F.2d 49, 50, 52 (4th Cir.1972).

7. *See* 28 U.S.C. § 1651; *see, e.g., Hirabayashi v. United States,* 828 F.2d 591, 604 (9th Cir. 1987).

8. *See Menard v. Saxbe,* 498 F.2d 1017, 1022–23 (D.C.Cir.1974); *Sullivan v. Murphy,* 478

F.2d 938, 960 (D.C.Cir.1973); *Paton v. La Prade,* 524 F.2d 862, 865, 868 (3d Cir.1975).

9. *See* 21 U.S.C. § 844(b)(2); 5 U.S.C. § 552a; *see, e.g., Scruggs v. United States,* 929 F.2d 305, 306 (7th Cir.1991).

10. *See* Fed.R.Crim.P. 33.

11. *See* 18 U.S.C. 3582(c); Fed.R.Crim.P. 35(a), (c).

12. *See* Fed.R.Crim.P. 35(b).

district court with a basis for exercising jurisdiction over the prosecution of the offense. That statute states that "[t]he district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231. We must decide whether § 3231 empowered the district court to consider the merits of Sumner's motion to expunge the record of his conviction and arrest.

A district court has "inherent jurisdiction within the time allowed for appeal to modify its judgment for errors of fact or law or even to revoke a judgment." *United States v. Villapudua–Perada,* 896 F.2d 1154, 1156 (9th Cir.1990). Rule 4(b) of the Federal Rules of Appellate Procedure provides that "a defendant's notice of appeal must be filed in the district court within 10 days after the entry of either the judgment or the order being appealed." Fed. R.App. P. 4(b). Once that time has elapsed, however, the interest in finality attaches and further litigation generally must cease. *See* 18 U.S.C. § 3562(b) (providing that, with certain exceptions, a judgment of a conviction that includes a sentence of probation is a final judgment); *cf. Browder v. Director, Dept. of Corrections of Ill.,* 434 U.S. 257, 264, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978) (stating that the time for appeal under Rule 4(a) of the Federal Rules of Appellate Procedure is "mandatory and jurisdictional"). In other words, the expiration of the time to file an appeal under Rule 4(b) is a jurisdictional limitation upon the powers of the district court after a judgment of conviction has been entered. *See* 18 U.S.C. § 3562(b); *United States v. Dumont,* 936 F.2d 292, 295 (7th Cir.1991) (stating that the limit established by Rule 4(b) is jurisdictional); *cf. United States v. Foumai,* 910 F.2d 617, 620 (9th Cir.1990) (stating that 18 U.S.C. § 3731, which sets the time for appeal, is a jurisdictional limitation which divests the trial court of authority to reconsider a judgment).

The Second Circuit and the District of Columbia Circuit have concluded that district courts also have ancillary jurisdiction to expunge criminal records, stemming from their jurisdiction over the underlying criminal prosecution. *See Schnitzer,* 567 F.2d at 538; *Morrow v. District of Columbia,* 417 F.2d 728, 740 (D.C.Cir.1969). Ancillary jurisdiction is the power of a court to adjudicate and determine matters incidental to the exercise of its primary jurisdiction over a cause under review. *See Black's Law Dictionary* 86 (6th ed.1990). That power extends to proceedings concerned with the pleadings, the processes, *the records,* or *the judgment* in the principal case. *See id.* In *Schnitzer,* the Second Circuit held that the district court had ancillary jurisdiction to consider the merits of the defendant's motion to expunge an arrest record following the dismissal of an indictment filed against him. 567 F.2d at 538. The Second Circuit affirmed the denial of the defendant's motion because he had failed to demonstrate that extreme circumstances justified the exercise of equitable jurisdiction. *See id.* at 539–40. The court held that the fact that Schnitzer would be asked to explain the circumstances of his arrest was not "harsh or unique." *Id.* at 540. The court observed that "[s]uch an explanation may be expected from those about to enter a profession." *Id.* No issue was raised in *Schnitzer* regarding the legality of the arrest or the indictment.

In *Morrow,* the District of Columbia Circuit held that the trial court had ancillary jurisdiction to issue an order regarding the dissemination of the defendant's arrest record. 417 F.2d at 740. There, the defendant was arrested for disorderly conduct for swearing at a police officer. *See id.* at 730. The Court of General Sessions for the District of Columbia dismissed the case because it had been brought by the Corporation Counsel of the District of Columbia rather than by the United States Attorney. *See id.* The trial court then granted the defendant's motion for an order requiring that the record of

his arrest be expunged. *See id.* No question was presented in Morrow regarding the legality of the defendant's arrest.

Since the publication of *Schnitzer* and *Morrow,* we have assumed without deciding that district courts may order the expungement of criminal records as part of their ancillary jurisdiction. *See Smith,* 940 F.2d at 396; *United States v. G,* 774 F.2d 1392, 1394 (9th Cir.1985). We must now determine, as a matter of first impression in this circuit, whether a district court has ancillary jurisdiction to expunge criminal records, and if so whether the record of a *valid* arrest and conviction may be expunged based purely on equitable grounds. *See Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 95, 101, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (instructing the lower federal courts that they must decide issues of jurisdiction before reaching the merits of a case).

 We agree with our sister circuits that district courts possess ancillary jurisdiction to expunge criminal records. That jurisdiction flows out of the congressional grant of jurisdiction to hear cases involving offenses against the United States pursuant to 18 U.S.C. § 3231. We do not agree, however, that a district court has the power to expunge a record of a valid arrest and conviction solely for equitable considerations. In our view, a district court's ancillary jurisdiction is limited to expunging the record of an unlawful arrest or conviction, or to correcting a clerical error.

 The Supreme Court has instructed that the doctrine of ancillary jurisdiction may be used "for two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its au-

thority, and effectuate its decrees." *Kokkonen,* 511 U.S. at 379–80, 114 S.Ct. 1673 (internal citations omitted). It is this latter purpose—to manage proceedings, vindicate authority, and effectuate decrees—that permits a district court to order the expungement of criminal records in cases over which it once exercised jurisdiction. Expungement of a criminal record solely on equitable grounds, such as to reward a defendant's rehabilitation and commendable post-conviction conduct, does not serve any of those goals.

More importantly, the expungement of the record of a valid arrest and conviction usurps the powers that the framers of the Constitution allocated to Congress, the Executive, and the states. The Constitution confers upon Congress the power to enact laws and upon the Executive the power to enforce them. *See* U.S. Const. arts. I, II. It reserves in the states all powers not delegated to the federal government or prohibited by law. *See* U.S. Const. amend. X. The expungement of an accurate record of a valid arrest and conviction necessarily disrupts this balance of power and, in doing so, violates the principles of federalism upon which our system of government is founded. In eliminating the record of a conviction and arrest, expungement necessarily nullifies a law which Congress has properly enacted and which the Executive has successfully enforced.[13] *See Doe v. INS,* 120 F.3d 200, 204 (9th Cir.1997) (stating that "to vacate a final conviction solely because the defendant faces deportation would usurp the power of Congress to set naturalization and deportation standards and the power of the INS to administer those standards") (quotations omitted). When states have established professional standards that are affected by criminal records, expungement also trenches on their right to regulate employment within their borders. "Ab-

---

**13.** We note that an order requiring the Executive to expunge its own records also nullifies the statute enacted by Congress mandating that the Attorney General of the United States

acquire, collect, classify, and preserve records of crimes and criminal identification. *See* 28 U.S.C. § 534; *United States v. Janik,* 10 F.3d 470, 472 (7th Cir.1993).

sent a clearer statutory or historical basis, an article III court should not arrogate such power unto itself." *United States v. Reyes*, 945 F.2d 862, 866 (5th Cir.1991).

Sumner has not cited, nor has our research disclosed, any statute in which Congress has empowered a district court to reopen a criminal case after its judgment has become final for the purpose of expunging a record of a valid arrest or conviction to enhance a defendant's employment opportunities. We hold that a district court does not have ancillary jurisdiction in a criminal case to expunge an arrest or conviction record where the sole basis alleged by the defendant is that he or she seeks equitable relief. The power to expunge a record of a valid arrest and conviction on equitable grounds must be declared by Congress. The Constitution prohibits federal courts from expanding their own subject matter jurisdiction.

AFFIRMED.