UNITED STATES of America,
Plaintiff–Appellee,

v.

Arleno Moreno INOCENCIO,
Defendant–Appellant.

No. 02–10288.

United States Court of Appeals,
Ninth Circuit.

Submitted May 9, 2003.*

Filed May 19, 2003.

---

Loretta A. Faymonville, Assistant Federal Defender, Honolulu, HI, for the defendant-appellant.

J. Michael Seabright, Assistant United States Attorney, Honolulu, HI, for the plaintiff-appellee.

Before GOODWIN, RYMER, and T.G. NELSON, Circuit Judges.

## OPINION

GOODWIN, Circuit Judge.

Arleno Moreno Inocencio appeals an amended judgment revoking her naturalization pursuant to 8 U.S.C. § 1451(e) as consequence of her conviction, in a jury trial, for naturalization fraud in violation of 18 U.S.C. § 1425(b). We affirm.

### I.

On September 19, 1996, a jury found Inocencio guilty of three counts of naturalization fraud in violation of 18 U.S.C. § 1425(b) (Count 1) and 18 U.S.C. § 1015 (Counts 2 & 3). On January 13, 1997, the district court entered a judgment sentencing Inocencio to three years of probation, and ordering her to pay a $2,000 fine and a $150.00 special assessment. The government did not call to the attention of the district court the mandate of 8 U.S.C. § 1451(e), and the court did not, on its own initiative, order the revocation of Inocencio's fraudulent and void naturalization.

On September 21, 1998, two years into Inocencio's probation, and still asleep, the government filed a "satisfaction of judgment" with the district court, acknowledging that Inocencio had paid the fine and special assessment. Inocencio's probation officer reported that she had complied with the conditions of probation and that the period of probation had expired.

The district court then entered an order on January 12, 2000 discharging Inocencio from probation and terminating the criminal case.

On March 20, 2002, the government lodged an application under 8 U.S.C. § 1451(e) for an order revoking Inocencio's naturalization because of her conviction on Count 1 for naturalization fraud in violation of 18 U.S.C. § 1425(b). The government served on Inocencio's last counsel of record (the Office of the Federal Defender for the District of Hawaii) a copy of this application.

On April 5, 2002, the Assistant Federal Defender who represented Inocencio at trial filed an objection to the government's application, questioning whether the Office of the Federal Defender continued to represent Inocencio and the sufficiency of notice. The objection also challenged the district court's jurisdiction to enter a revocation order because the criminal case had been closed.

The defender proposed that the government should now be required to file a civil action under 8 U.S.C. § 1451(a) to revoke Inocencio's naturalization, a proceeding the government may choose to follow when there has been no criminal conviction for immigration fraud. The district court rejected, as a useless formality, the proposal of civil litigation, and, without a hearing, granted the government's belated application for revocation of Inocencio's naturalization. This timely appeal followed.

### II.

#### A. Jurisdiction

8 U.S.C. § 1451(e) provides:

When a person shall be convicted under section 1425 of Title 18 of knowingly procuring naturalization in violation of law, the court in which such conviction is had *shall thereupon* revoke, set aside,

and declare void the final order admitting such person to citizenship, and *shall* declare the certificate of naturalization of such person to be canceled. Jurisdiction is conferred on the courts having jurisdiction of the trial of such offense to make such adjudication.

(emphasis added).

Revocation of naturalization is mandatory upon conviction of naturalization fraud in violation of section 1425; Congress plainly contemplated that district courts having jurisdiction over criminal trials would automatically revoke naturalization upon such convictions. *See United States v. Pasillas–Gaytan,* 192 F.3d 864, 869 (9th Cir.1999) ("Conviction [under 18 U.S.C. § 1425 ] results in a revocation of citizenship."); *United States v. Moses,* 94 F.3d 182, 188 (5th Cir.1996) ("[Section 1451(e) ] is mandatory—the district court *shall* revoke the citizenship if the individual is convicted under section 1425." (emphasis in original)); *Bridges v. United States,* 199 F.2d 845, 846 (9th Cir.1952) (explaining that revocation is "meant to be part of the criminal proceedings and not a separate proceeding" given that the statute "states that when a person is convicted of obtaining citizenship by fraud, his citizenship shall 'thereupon' be revoked in the same court where he was convicted"), *rev'd on other grounds,* 346 U.S. 209, 73 S.Ct. 1055, 97 L.Ed. 1557 (1953).

■ Although we have found no case directly on point, the Eleventh Circuit's decision in *United States v. Maduno,* 40 F.3d 1212 (11th Cir.1994), supports the district court's jurisdiction to correct its ministerial oversight here. While the case arose in a different procedural context, and confronted the general rule that the filing of a notice of appeal ordinarily divests the trial court of jurisdiction, the court in *Maduno* rejected the defendant's argument that the notice of appeal from his conviction under 18 U.S.C. § 1425(b)

divested the district court's jurisdiction to revoke his certificate of naturalization pursuant to 8 U.S.C. § 1451(e). The *Maduno* court reasoned that "revocation is a simple ministerial task and involves no exercise of discretion because the revocation is statutorily mandated." *Id.* at 1218. We agree with this reasoning.

The defendant cites a number of cases for the proposition that the district court had no jurisdiction to re-open her criminal case, leading with *INS v. Abudu,* 485 U.S. 94, 107, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988) (disallowing the re-opening of deportation proceedings to permit an alien to apply for asylum and withholding of deportation), and *United States v. Sumner,* 226 F.3d 1005, 1015 (9th Cir.2000) (disallowing the re-opening of a criminal case to hear the defendant's motion to expunge valid arrest and conviction after the defendant's probationary period had terminated). These cases shed valuable light on the finality of judgments that did not involve a mere clerical error. When the question is correctly stated, the answer is obvious. The district court had no discretion here; this case involves a simple ministerial oversight.

Indeed, our reasoning in *Sumner* supports the district court's jurisdiction to correct its ministerial failure *nunc pro tunc* in this case. The defendant in that case had been convicted of a drug crime and sentenced under the Federal Youth Corrections Act (FYCA) to a probationary period and ordered to pay a fine. 226 F.3d at 1008. Twenty-six years later, the defendant filed a motion in the same criminal case to have his conviction expunged under the "set aside" provision in the FYCA. *Id.* The court noted that the FYCA allows "youthful offenders who are sentenced to probation to have their convictions automatically 'set aside' where the district court grants an unconditional dis-

charge from probation '*prior to the expiration of the maximum period of probation* [,]' " and that a district court has "limited jurisdiction to exercise its discretion retroactively to grant an early unconditional discharge and to set aside a conviction after the completion of the probationary period." *Id.* at 1009 (emphasis in original). But that jurisdiction, *Sumner* said, "has only been extended to those circumstances in which the failure to grant an early unconditional discharge from probation was due to an *oversight* by the district court." *Id.* (emphasis in original).

Because the defendant in *Sumner* had not demonstrated that the district court's failure to set aside his conviction during the probationary period was the result of a mere oversight, we held "that the FYCA did not confer jurisdiction upon the district court to set aside his conviction after the probationary period had expired." *Id.* at 1010. We reasoned:

> The power to amend *nunc pro tunc* is a limited one, and may be used only where necessary to correct a clear mistake and prevent injustice.... [I]ts use is limited to making the record reflect what the district court actually intended to do at an earlier date, but which it did not sufficiently express or did not accomplish due to some error or inadvertence. The purpose of the FYCA set aside provision was not to guarantee all youthful offenders a clean slate. Rather it was designed to provide them with an incentive to make the most of their period of probation or confinement. The incentive might be significantly weaker if convictions were set aside regardless of whether the youth offender, by his conduct during the probationary period, had convinced the sentencing court to discharge him before the expiration of his probationary term.

*Id.* (internal citations and quotation marks omitted).

Here, in contrast to the purpose of the set aside provision in the FYCA, the purpose of 8 U.S.C. § 1451(e) is to ensure the *automatic* revocation of naturalization upon a conviction for naturalization fraud under 18 U.S.C. § 1425. We hold that Congress' conferral of jurisdiction in section 1451(e) extends to permit a district court at any time to correct its ministerial failure to revoke naturalization upon a conviction under 18 U.S.C. § 1425. To hold otherwise would defeat Congress' plain intent in requiring revocation pursuant to section 1451(e) upon a conviction for violating 18 U.S.C. § 1425, and would force pointless civil proceedings under 8 U.S.C. § 1451(a).

Our recent decision in *United States v. Penna*, 319 F.3d 509 (9th Cir.2003), does not affect this conclusion. *Penna* involved a district court's jurisdiction to correct a sentence under Federal Rules of Criminal Procedure 35 and 36. No one here is claiming that the district court revoked (or could have revoked) a certificate of naturalization under color of either Rule 35 or 36. Revocation is a mandatory chore; failing to revoke did not result from a judgmental error but from oversight. Nor does revocation have to do with *sentencing*, which has its own regime for determining the extent of a district court's jurisdiction to correct errors. Rather, this case turns on how "having" jurisdiction in section 1425 should be interpreted.

## B. Due Process

We also reject Inocencio's argument that the district court's correction of its oversight in this case five years after it sentenced her for having violated 18 U.S.C. § 1425(b) offends due process. Inocencio lost any right she had to naturalization after she was convicted of naturalization fraud. *See Costello v. United States*, 365 U.S. 265, 283–84, 81 S.Ct. 534,

5 L.Ed.2d 551 (1961). Addressing the due process ramifications of the government's 27–year delay in bringing civil proceedings to revoke naturalization under 8 U.S.C. § 1451(a), the Supreme Court in *Costello* explained:

> We may assume that [Costello] has built a life in reliance upon [his] citizenship. But Congress has not enacted a time bar applicable to proceedings to revoke citizenship procured by fraud. [Costello] never had a right to his citizenship. Depriving him of his fraudulently acquired privilege, even after the lapse of many years, is not so unreasonable as to constitute a denial of due process.

*Id.* See also *United States v. Martinez*, 837 F.2d 861, 864–65 (9th Cir.1988) (no violation of due process where defendant was sentenced to incarceration but due to a clerical error was not ordered to report to serve his sentence until seven and one-half years later when the government discovered the mistake).

■ Inocencio also complains that she was not given proper notice or opportunity to respond before the district court revoked her naturalization. Criminal Rule 36 provides for "any notice the court considers appropriate." Because 8 U.S.C. § 1451(e) does not provide for notice or an opportunity to respond beyond the notice inherent in a trial and a verdict of guilty, revocation under that subsection is automatic. *Cf.* 8 U.S.C. § 1451(b) (requiring notice and opportunity to respond in revocation proceedings initiated under section 1451(a) (providing for revocation of naturalization through civil proceedings where naturalization was procured illegally, through concealment of a material fact, or by willful misrepresentation)). Because the district court revoked Inocencio's naturalization under § 1451(e) as part of the original criminal proceedings, re-opened for the sole purpose of correcting a clerical error, she was not entitled to notice or an opportunity to respond. Moreover, the government did serve a copy of its application to correct the judgment upon Inocencio's counsel of record and she has made no showing that she had a defense to the motion which was not raised by counsel.

**AFFIRMED.**