[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-12800

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JAMES BATMASIAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:08-cr-60089-KAM-1

_____

Before BRANCH and LUCK, Circuit Judges, and ANTOON,* District Judge.

BRANCH, Circuit Judge:

Pardoned felon James Batmasian appeals the district court's denial of his motion to expunge the records of his criminal conviction. Batmasian argues that the district court erred in concluding that, (1) it lacked jurisdiction over his claim; and (2) even if it had jurisdiction, the merits of his motion did not warrant expungement. After oral argument and consideration of the record below, we conclude that the district court lacked jurisdiction over Batmasian's motion. However, because the district court assumed that it had jurisdiction and evaluated and denied Batmasian's motion on the merits, we vacate and remand with instructions to dismiss for lack of jurisdiction.

## I.     Background

In April 2008, the United States charged James Batmasian with failure to pay federal withholding taxes in violation of 26 U.S.C. § 7202. Batmasian pleaded guilty, and the district court sentenced him to eight months imprisonment, two years of supervised release, and a $30,000 fine. After Batmasian completed his sentence and paid his fine, Florida Governor Rick Scott restored

---

* Honorable John Antoon II, United States District Judge for the Middle District of Florida, sitting by designation.

his civil rights in March 2017, and President Donald Trump issued him a complete pardon in December 2020.

In April 2021, after receiving the presidential pardon, Batmasian filed with the district court in the same criminal action as his underlying conviction a "verified motion to expunge and seal judicial records after a Presidential Pardon." Batmasian, self-described as a person of extraordinary wealth with a history of charitable giving, alleged that he was denied participation in many philanthropic efforts because of his conviction. Despite the presidential pardon and the restoration of his civil rights, Batmasian claimed that the conviction "continue[d] to cause exceptional difficulties and hardships" to his "pioneering philanthropic endeavors and the desire to be proactive with . . . charity." For example, he explained that a Florida university had declined his offer to endow a "Real Estate Chair," that a Bill Gates charity called "The Giving Pledge" had not processed his application to be a participant, that several charities had removed him from their boards of directors, and that a charity he founded had not received any grant funding. Batmasian alleged that "[o]nly with the expungement can [he] exercise his basic legal right of charitable giving to the fullest extent possible."

In his expungement motion, Batmasian asserted that federal district courts have the "inherent *equitable* power ancillary to their criminal jurisdiction" to order the expungement of criminal records. The government responded, arguing that the district court should deny the motion because it lacked jurisdiction to hear

it, citing the Supreme Court's analysis of the limited reach of ancillary jurisdiction in *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375 (1994). In reply, Batmasian asserted that the district court had ancillary jurisdiction over his request, arguing for the first time that his motion to expunge was based, at least in part, on *constitutional*, rather than purely equitable, grounds—namely, "his [c]onstitutionally protected rights to dispose of his wealth."

The district court concluded that it lacked jurisdiction to hear the request for expungement. The district court then assumed that it had the authority to consider the motion, evaluated the motion, and denied the motion on the merits. Batmasian appeals the district court's decision.

## II.    Discussion

Batmasian argues that the district court had ancillary jurisdiction to hear his expungement motion because his request was "based entirely on the constitutional impairment that his [c]onviction causes on his First Amendment rights to give away his wealth and participate with the benefitted charities." We disagree and hold the district court lacked jurisdiction to hear Batmasian's expungement motion.

"We review de novo a district court's determination of whether it has subject-matter jurisdiction." *Gupta v. McGahey*, 709 F.3d 1062, 1064–65 (11th Cir. 2013); *see also Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) ("[E]very

federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review. . . .'" (quoting *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934))).  When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground.  *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014).

As "[a] court[] of limited jurisdiction," a federal court "possess[es] only that power authorized by [the] Constitution and statute[s], which is not to be expanded by judicial decree." *Kokkonen*, 511 U.S. at 377 (internal citations omitted).  Indeed, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Id.* (internal citation omitted).

As Batmasian acknowledges, no federal statute authorizes district courts to hear the type of expungement motion he brings. Instead, Batmasian relies on the doctrine of "ancillary jurisdiction, which recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." *Id.* at 378.

In *Kokkonen*, the Supreme Court clarified that ancillary jurisdiction can be invoked for two limited purposes: "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate

6                   Opinion of the Court                21-12800

its authority, and effectuate its decrees." *Id.* at 379–80 (internal citations omitted).

Although expungement was not at issue in *Kokkonen*, courts have consistently applied the *Kokkonen* framework to requests from defendants to utilize their ancillary jurisdiction to expunge criminal records. In doing so, courts have evaluated requests for two potential forms of expungement under their ancillary jurisdiction—"equitable" expungement and "constitutional" expungement.

We first turn to equitable expungements. While Batmasian argued below that his request is for an equitable expungement, he expressly disclaims any argument for an equitable expungement on appeal.[1] Thus, we need not address whether the district court had ancillary jurisdiction to hear a motion for an equitable expungement.[2] *Sapuppo*, 739 F.3d at 680.

---

[1] In fact, Batmasian admits in his initial brief that if his "request for expungement was equitable, the District Court below would have been correct."

[2] We note that the First, Second, Third, Sixth, Seventh, Eighth, and Ninth Circuits have declined to recognize that they have ancillary jurisdiction to hear equitable expungement motions in light of *Kokkonen*. *See United States v. Coloian*, 480 F.3d 47, 48–49, 52 (1st Cir. 2007) (holding that "*Kokkonen* forecloses any ancillary jurisdiction to order expungement based on [the individual's] proffered equitable reasons"); *Doe v. United States*, 833 F.3d 192, 199 (2d Cir. 2016) (denying jurisdiction to equitably expunge a criminal conviction where the "exercise of ancillary jurisdiction . . . [would serve] neither of the goals identified in *Kokkonen*"); *United States v. Dunegan*, 251

Instead, Batmasian's sole contention on appeal is that his request is for a constitutional expungement. At the outset, we note

---

F.3d 477, 479–80 (3d Cir. 2001) (applying *Kokkonen* and holding that "a District Court does not have the jurisdiction to expunge a criminal record" on equitable grounds); *United States v. Lucido*, 612 F.3d 871, 874–76 (6th Cir. 2010) (applying *Kokkonen* and holding that "federal courts lack ancillary jurisdiction to consider expungement motions" on equitable grounds); *United States v. Wahi*, 850 F.3d 296, 302 (7th Cir. 2017) (applying *Kokkonen* and holding that "ancillary jurisdiction does *not* include a general equitable power to expunge judicial records"); *United States v. Meyer*, 439 F.3d 855, 860 (8th Cir. 2006) (holding "that post-*Kokkonen* a motion to expunge a criminal record that is based solely on equitable grounds does not invoke the ancillary jurisdiction of the district court"); *United States v. Sumner*, 226 F.3d 1005, 1014 (9th Cir. 2000) (applying *Kokkonen* and holding that "district court[s] [do not have] the power to expunge a record of a valid arrest and conviction solely for equitable considerations").

To our knowledge, only the Tenth Circuit has come to the opposite conclusion post-*Kokkonen*. *See Camfield v. City of Oklahoma City*, 248 F.3d 1214, 1234–35 (10th Cir. 2001) ("[I]t is well settled in this circuit that courts have inherent equitable authority to order the expungement of an arrest record or a conviction in rare or extreme circumstances."). But *Camfield* relied on longstanding Tenth Circuit precedent established before the Supreme Court's decision in *Kokkonen*, and *Camfield* does not address or reference *Kokkonen*. Further, the issue in *Camfield* was whether the district court had the ability to expunge specific identifying information from a police report, so the more general statement about the expungement of arrest records or convictions was not central to the Court's holding and was therefore dicta.

8                    Opinion of the Court                    21-12800

that, post-*Kokkonen*, no circuit has expressly embraced ancillary jurisdiction for constitutional expungement requests.[3]

Batmasian is indeed correct that several sister circuits have, however, recognized that ancillary jurisdiction might exist for constitutional expungements. For example, in *United States v. Field*, the Sixth Circuit alluded to this possibility when it rejected

---

[3] Although unclear, Batmasian appears to assert that one circuit has held there is jurisdiction for constitutional expungement claims. He cites to *United States v. Rowlands*, 451 F.3d 173, 178 (3d Cir. 2006), and claims that *Rowlands* held that "a district court has the inherent authority to expunge records to preserve basic legal rights." This argument is disingenuous, as *Rowlands* was an equitable expungement case where the Third Circuit held that the district court had no jurisdiction over the appellant's motion for an equitable expungement. *Id.* at 179. Specifically, the defendant in *Rowlands* argued that the Third Circuit had jurisdiction over his expungement motion based on the Third Circuit's statement in *United States v. Noonan*, 906 F.2d 952, 956 (3d Cir. 1990), that, "a federal court has the inherent power to expunge an arrest and conviction record." *Id.* at 176. The Third Circuit explained in *Rowlands* that the defendant had taken the statement from *Noonan* out of context, noting that in *Noonan* the Court held that it had jurisdiction over expungement motions in certain narrow circumstances, which were not present in Noonan's case. *Id.* at 177. Importantly, *Noonan* was decided in 1990, four years before *Kokkonen*, and, as the *Rowlands* Court noted, "the cases upon which *Noonan* relied support[ted] [its subsequent] conclusion [in *Rowlands*] that [it had] jurisdiction over petitions for expungement in narrow circumstances: where the validity of the underlying proceeding is being challenged." *Id.* And while the *Rowlands* Court did state that it might have jurisdiction in such situations, the Court ultimately held that there was no jurisdiction over the appellant's expungement motion, so its statement regarding *Noonan* was dicta. Further, while *Rowlands* was decided after *Kokkonen*, it does not address or reference *Kokkonen*.

21-12800                 Opinion of the Court                 9

an appellant's request to invoke ancillary jurisdiction for an equitable expungement, stating that, "post-*Kokkonen*, federal courts lack ancillary jurisdiction over motions for expungement based on purely equitable considerations, yet retain ancillary jurisdiction over motions challenging an unconstitutional conviction."[4]  756 F.3d 911, 916 (6th Cir. 2014).  But the Sixth Circuit went on to clarify that, even where an expungement motion "challenges an unconstitutional conviction or illegal arrest," such situations nonetheless require the application of the *Kokkonen* framework—that is, "the assertion of ancillary jurisdiction must enable the court to 'manage its proceedings, vindicate its authority, and effectuate its decrees.'"  *Id.* (quoting *Kokkonen*, 511 U.S. at 380).

In line with that approach, we hereby apply *Kokkonen* to Batmasian's request for a constitutional expungement.  Since the proceedings from Batmasian's underlying tax offense—the offense for which Batmasian brings his expungement claim—concluded

---

[4] The Eighth and Ninth Circuits have each similarly noted a possible avenue for a constitutional expungement of an unconstitutional arrest or conviction through a district court's ancillary jurisdiction in cases where they expressly disclaimed any ancillary jurisdiction for equitable expungement motions. *See Meyer*, 439 F.3d at 861–62 ("A district court may have ancillary jurisdiction to expunge criminal records in extraordinary cases to preserve its ability to function successfully by enabling it to correct an injustice caused by an illegal or invalid criminal proceeding."); *Sumner*, 226 F.3d at 1014 ("[A] district court's ancillary jurisdiction is limited to expunging the record of an unlawful arrest or conviction . . . .").

more than a decade ago, the invocation of ancillary jurisdiction for an expungement of his record so that he can more easily donate to charity is not necessary "to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent," nor is it necessary for the court to "manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen*, 511 U.S. at 379–80.

We also agree with *Field* that the only way ancillary jurisdiction might exist for a constitutional expungement is where the motion challenges an arrest or conviction as unconstitutional. Batmasian is making no such challenge. Thus, Batmasian is incorrect that we have ancillary jurisdiction over his so-called constitutional expungement claim based on First Amendment grounds.

Seemingly as a fallback, Batmasian points to broad language from several circuits that, he appears to argue, suggests that the Constitution may directly provide jurisdiction for an expungement, outside the realm of ancillary jurisdiction. *See Wahi*, 850 F.3d at 303 ("Expungement authority must . . . have a source in the Constitution or statutes."); *Meyer*, 439 F.3d at 861 (holding that a district court did not have jurisdiction to expunge a defendant's criminal record where he did not allege that his "conviction was in any way invalid or illegal nor did he rely on any Constitutional provision or statute authorizing . . . a district court . . . to expunge his criminal conviction"); *Sumner*, 226 F.3d at 1010 (explaining that a district court has the authority to expunge a

criminal record where a statute "or the Constitution itself" otherwise provide for such authority). However, despite these cursory mentions, no court has ever held that the Constitution directly provides jurisdiction to hear any expungement motions. As best as we can tell, these circuits are simply rephrasing the requirement that federal courts "possess only that power authorized by Constitution and statute." *Kokkonen*, 511 U.S. at 377. Thus, these courts are not opening up ancillary jurisdiction to all expungement motions based on some unspecified constitutional provision. As such, even if Batmasian was correct that his conviction impaired his "First Amendment rights,"[5] the Constitution nonetheless does not provide the requisite jurisdiction for the district court to hear his expungement motion.

In sum, no court has ever recognized ancillary jurisdiction over a constitutional expungement where the alleged constitutional violation was the natural result of an otherwise valid arrest or conviction. We do not do so today. Because Batmasian

---

[5] While we cannot reach the merits of Batmasian's claim, we note that he fails to identify a government action that inhibits this First Amendment right. *See Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019) ("[T]he Free Speech Clause prohibits only *governmental* abridgement of speech.") Instead, any impediments he may face stem from the actions of private parties—both the decisions of private charities and foundations and his own illicit behavior that led to his conviction for the tax offense. Without an unconstitutional government action, there can be no violation of the First Amendment.

has not satisfied *Kokkonen*, we do not have ancillary jurisdiction over his expungement claim.

### III.    Conclusion

Although the district court correctly noted that it lacked the requisite ancillary jurisdiction to hear Batmasian's expungement motion, it ultimately impermissibly evaluated and denied the motion on the merits.  Accordingly, we vacate the district court's decision and remand with instructions to dismiss Batmasian's expungement motion for lack of subject-matter jurisdiction.

**VACATED AND REMANDED.**