**Aaron B. SCRUGGS,
Plaintiff–Appellant,**

**v.**

**UNITED STATES of America,
Defendant–Appellee.**

**No. 89–2695.**

United States Court of Appeals,
Seventh Circuit.

Submitted March 20, 1991.

Decided April 3, 1991.

Aaron B. Scruggs, Pendleton, Ind., pro se.

Andrew B. Baker, Jr., Hammond, Ind., and David H. Miller, Asst. U.S. Attys., Office of the U.S. Atty., Fort Wayne, Ind., for U.S.

Before CUDAHY, EASTERBROOK and RIPPLE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Ten years ago a jury found Aaron Scruggs not guilty of being a convicted felon in possession of a firearm. Two years ago Scruggs, then as now in state custody on an unrelated charge, asked the district court in which the trial occurred to expunge his arrest record. The judge declined, observing that acquittal—the only reason Scruggs gave for his request—is an insufficient reason for expurgation.

■ Neither the parties nor the district court inquired into subject-matter jurisdiction. What *is* the basis of this suit? The criminal case ended in 1981. Scruggs did not seek to revisit that judgment, which was favorable to him. He wants relief against the United States. Being a defendant in a criminal prosecution does not forever license litigation against the government without a jurisdictional footing.

As it happens, however, the Privacy Act authorizes anyone to file suit seeking the amendment of records the federal government maintains concerning him. 5 U.S.C. § 552a(g)(1). The Privacy Act calls for exhaustion of administrative remedies, § 552a(d)(3), and requires the plaintiff to name the agency (rather than the United States) as the defendant, § 552a(g)(1), but neither of these affects subject-matter jurisdiction. Exhaustion and naming conventions may be waived by the government.

*Weinberger v. Salfi,* 422 U.S. 749, 766–67, 95 S.Ct. 2457, 2467–68, 45 L.Ed.2d 522 (1975). The United States, which conceded that the district court possessed "ancillary" jurisdiction over this suit, has surrendered any claim to the benefits of these aspects of the Privacy Act. So, too, it has forfeited any reliance on its law-enforcement exceptions that might be appropriate, § 552a(j)(2), (k)(2).

Scruggs' argument in this court is more elaborate than his presentation to the district court. He contends that the arrest was not only unproductive for the government (ending in acquittal) but also unconstitutional, because without probable cause. He asks us to exercise our "inherent" powers to cleanse the blot from his escutcheon.

Although some cases speak of inherent powers to obliterate arrest records, e.g., *United States v. Linn,* 513 F.2d 925 (10th Cir.1975), which we cited favorably in *Diamond v. United States,* 649 F.2d 496 (7th Cir.1981), a court's "inherent" powers concern the management of *judicial* business. Judges lack supervisory powers over the behavior of the Executive Branch of the government. Even powers over the conduct of litigation may be curtailed by statute or rule. *Bank of Nova Scotia v. United States,* 487 U.S. 250, 254–55, 108 S.Ct. 2369, 2373–74, 101 L.Ed.2d 228 (1988); *United States v. Payner,* 447 U.S. 727, 733–37, 100 S.Ct. 2439, 2445–47, 65 L.Ed.2d 468 (1980). Scruggs wants a court to direct the Executive Branch to remove from its files all references to his arrest in 1981, an event that concededly occurred. Whether courts may rewrite history depends principally on statutes.

■ It may be that a statute is unnecessary if the Constitution *forbids* the keeping of a record—if the presence of a record is itself a violation of the supreme law of the land. Scruggs does not argue, however, that it is unconstitutional to keep a record of an arrest that violated the fourth amendment. We know from *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *United States v. Havens,* 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980); and *United States v.*

*Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), among other cases, that evidence obtained from searches and seizures that violate the fourth amendment has some legitimate uses. It follows that the records of such acts may be maintained. The Supreme Court has never understood the exclusionary rule to bar the government from *knowing about* an illegal arrest or search, even though the Constitution may block particular deployments of that information. And although an arrest record may be a black mark, *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), holds that besmirching a person's reputation is not independently unconstitutional.

What statutes govern, if the Constitution does not of its own force supply a remedy? At least one statute, 28 U.S.C. § 534, requires the Department of Justice (of which the FBI is a component) to collect criminal records and make them available to state and local law enforcement agencies. This law, coupled with the recognition that no statute authorizes expunction, recently led the ninth circuit to hold the remedy available only in "extreme circumstances", *United States v. Sweeney,* 914 F.2d 1260, 1264 (9th Cir.1990). Whether even "extreme" circumstances are sufficient is called into question by the Privacy Act. That statute limits the judicial role to ensuring that the agency's record is accurate, relevant, timely, and complete. 5 U.S.C. § 552a(g)(1)(C). The court must also ensure that the records do not reflect the exercise of first amendment rights, § 552a(e)(7), see *Smith v. Nixon,* 807 F.2d 197, 204 (D.C.Cir.1986) (Scalia, J.), but that substantive limit is not at issue.

Instead of authorizing a court to direct an agency to delete an accurate, relevant record that causes injury, the statute requires the agency to include in its records "a concise statement setting forth the [person's] reasons for his disagreement with the refusal of the agency" to delete or correct the record. 5 U.S.C. § 552a(d)(3). Specification of this remedy implies that courts are not free to grant redaction or expunction—not if the record is accurate,

relevant, timely, complete, and consistent with provisions such as § 552a(e)(7).

Several courts have concluded, notwithstanding (and usually without discussing) this implication of the Privacy Act, that judges may direct the pruning of even accurate (etc.) records when the affected person's privacy interest greatly outweighs the government's interest in maintaining the records. E.g., *United States v. Noonan*, 906 F.2d 952, 957 (3d Cir.1990) (dictum; holds that presidential pardon does not justify expungement); *Doe v. Air Force*, 812 F.2d 738 (D.C.Cir.1987) (dictum; holds that district court should consider whether Constitution independently requires expungement); *Hobson v. Wilson*, 737 F.2d 1, 65–66 (D.C.Cir.1984) (dictum; case involves § 552a(e)(7), which expressly authorizes expungement); *Paton v. La Prade*, 524 F.2d 862, 868–69 (3d Cir.1975) (lists factors and remands for initial consideration by district judge); *Chastain v. Kelley*, 510 F.2d 1232, 1236 (D.C.Cir.1975) (dictum; holds expungement improper because district judge found no inaccuracy in the records). None of these cases orders expunction, and only one cites the Privacy Act. *Diamond*, the only case in this circuit about the subject, is among those that do not mention the Privacy Act—perhaps because the Department of Justice paid no more attention to jurisdiction and the authority for a remedy there than it has done in this case.

We need not decide what effect the Privacy Act has on a request for expungement, because Scruggs does not qualify for relief under any approach. Maintaining the record of an unlawful arrest is not independently unconstitutional, we have already explained. More, Scruggs offers no reason to suppose that his arrest was unlawful other than his belief that the witnesses against him were prevaricators. Acquittal does not establish the lack of probable cause; the prosecution's high burden of persuasion means that even some guilty persons will be found not guilty, and "probable cause" is a lower threshold than actual guilt. Scruggs has the proverbial record as long as an arm; one arrest more or less will not greatly affect his standing in the community.

 Motions to expunge records are not substitutes for timely motions to suppress evidence, or for *Bivens* litigation against those who may have violated the Constitution. Scruggs could have argued in 1981 that his arrest was unconstitutional, and he had an additional two years to initiate any "constitutional tort" litigation that he thought warranted. Instead he waited eight years before filing this motion for expungement. All disputes must come to an end, even those concerning grave accusations of crime. *United States v. Bush*, 888 F.2d 1145 (7th Cir.1989). A timely adjudication could have been included with the arrest record under § 552a(d)(3). Even if a court has the power to revisit the subject and order expunction at this late date, the district judge did not abuse his discretion in denying Scruggs' request.

AFFIRMED.