**UNITED STATES of America**

**v.**

**Edgar Hardin GILLOCK, Defendant.**

**No. 82–20091–4.**

United States District Court,
W.D. Tennessee, W.D.

July 26, 1991.

Robert M. Williams, Jr., Asst. U.S. Atty., Memphis, Tenn., for plaintiff.

Hal Gerber, Memphis, Tenn., for defendant.

### ORDER DENYING MOTION FOR EXPUNGEMENT OF RECORD

McRAE, Senior District Judge.

On May 31, 1991, there was filed in behalf of the defendant Edgar Hardin Gillock (hereinafter defendant or Gillock) a Motion for Expungement of Record (hereinafter expungement motion) by his present attorney who was not one of his attorneys when this case was tried.

The expungement motion seeks to have the Court expunge the entire record in this case approximately nine years after his conviction and after the completion of his prison sentence of seven years and parole thereon "because it operates as a barrier to his further professional and individual growth." The motion relies upon the Court's inherent equitable power to order expungement of such criminal records. The motion in numbered paragraph 12 refers to 28 U.S.C. § 534(a)(1) which provides that the "Attorney General shall acquire, collect, classify and preserve identification, criminal investigation, crime and other records"; however, it appears that the relief sought by the motion is to strike wholly or obliterate the entire record from the indictment through the denial of certiorari to the Supreme Court of the United States.

The motion relies upon a copy of the Judgment and Commitment Order which was attached to the original of the motion as Exhibit A. There are some factual, conclusory, broad allegations that will be referred to later in this ruling.

For the government, an Assistant United States Attorney, who did not handle the case at the trial, has caused to be filed the United States' Opposition to Defendant's Motion for Expungement of Record (hereinafter opposition to motion). It contains a section called Prior Criminal History in which reference is made to an earlier indictment in 1976 in which the defendant Gillock was charged with various offenses unrelated to the activity in this case. The case was appealed to the Sixth Circuit Court of Appeals on two occasions and later to the Supreme Court. Thereafter, the case went to trial in 1980, and a mistrial was declared based upon a failure of the jury to agree. Again, in 1981, the case was retried, and another mistrial for failure to agree was entered. Thereafter, the United States dismissed the charges in the fall of 1981. The opposition to motion states that the point of that prior history is to show that there exists a significant record pertaining to defendant Gillock prior to the record of conviction he now seeks to have the Court expunge. At the outset, the Court notes that this entire section will be disregarded in the Court's ruling. Because the case was not resolved, this Court is of the opinion that it is not relevant to the issues in this case of trial and conviction with significant appellate activity.

The opposition to motion also includes a section entitled Statement of the Case which undertakes to summarize the facts pertaining to this case and the actions of the Court of Appeals. There is attached to the opposition to motion a Petition for Restoration of Rights of Citizenship filed in the Circuit Court of Tennessee styled *Edgar Hardin Gillock v. John W. Pierotti, Attorney General.* The opposition to motion notes that the United States did not oppose that petition in the state court which was filed on April 19, 1991.

■ There is another section of the opposition which is entitled: This Court is Without Jurisdiction in this Matter. That section is brief. It relies upon *Scruggs v. United States,* 929 F.2d 305 (7th Cir.1991). The case is cited in the opposition to motion for the proposition that this Court as the trial court of the criminal case does not have jurisdiction over this matter which was brought as part of the criminal case because it should have been brought as an independent civil suit and then only after exhaustion of defendant's administrative remedies. This Court disagrees with the government's application of the *Scruggs* case to the *Gillock* case. *Scruggs* was a separate civil suit filed by a plaintiff who had filed the suit seeking to expunge his arrest records approximately eight years after he had been found not guilty on a possession of firearm charge in the federal court. While the case does address only arrest records and discusses in a large measure whether or not only the records kept by the Federal Bureau of Investigation as directed in 28 U.S.C. § 534 should be expunged, the Court of Appeals stated that it considered that the suit was brought in an effort to have the District Court exercise its "inherent power" in order to cleanse or blot out the arrest records. It was considered significant that there had been a not guilty verdict and Scruggs did not want to expunge that part of the record. The court considered other possible constitutional, statutory or rules grounds for expungement and ruled that none applied. Hence, the court affirmed the trial court's failure to order expungement.

This Court concludes that it has jurisdiction to consider the Gillock expungement motion on the entire record of this criminal case with which the Court is familiar through its recollection or the court's file available to it. The last phase of the opposition to motion is entitled: Expungement is Not Appropriate in This Case. This Court agrees and will discuss the applicable factual portions of the motion, opposition and the other parts of the record in connection with the applicable law to the expungement motion in this case.

## CASE AUTHORITY

In order to distinguish the various cases which are relied upon by counsel and which the Court has considered in this ruling, the Court will note some of the basic facts. This case commenced with an indictment of twenty counts filed in June of 1982. The defendant was a duly elected senator from Memphis, Shelby County, Tennessee in the state legislature of Tennessee. The twenty counts of the indictment included conspiracy, mail fraud, wire fraud, extortion, tax evasion and false statements in connection with filing a United States tax return. There were two codefendants, Allen Harvey Bibby and A. Arthur Ayers, former executives of Honeywell Information Systems, Inc. The criminal charges involved conduct of Gillock in connection with Honeywell's attempt and successful sale of computer equipment to the State of Tennessee and Shelby County. Bibby and Ayers and one Jack Comarda, a former employee of Honeywell, started separate companies specializing in financing of computer systems. The indictments as to Bibby and Ayers were based upon their illegal conduct in connection with the sales and financing of computers through Comarda and the raking off of monies generated by the sale and financing of Honeywell computers. Part of the illegal transactions by Comarda were involved with Gillock's alleged illegal transactions as a senator in the State of Tennessee and his relationship with Shelby County for which he got a sizeable sum of money claimed to have been attorneys fees and unreported on his tax return.[1] The trial was severely contested. Gillock was defiant. He testified, and the jury, based on its verdicts, clearly rejected the truth of his testimony in his own defense.

The jury found Gillock guilty on six counts of mail fraud, two counts of wire fraud, one count of extortion under 18 U.S.C. § 1951, one count of tax evasion, and one count of conspiracy with Ayers and Bibby. He was acquitted on three counts of making false tax returns. A mistrial was declared with respect to six other counts charging him with extortion. Gillock was sentenced to four years imprisonment on fraud, extortion and conspiracy counts and a consecutive three-year term on the tax evasion count. A fine was also imposed in the amount of $10,000. An appeal was taken to the Court of Appeals for the Sixth Circuit by all three of the defendants. The Court of Appeals affirmed Gillock's conviction on all counts except one wire fraud and the conspiracy count. The Court of Appeals opinion was lengthy and of particular significance because it made a holding that addressed the law of the circuit on misjoinder of offenses and misjoinder of defendants in criminal cases. A similar case was before the Supreme Court; therefore, certiorari was sought by all of the defendants in this case, and a considerable delay was realized in waiting for the Supreme Court to resolve that case.

After the judgment of the Court as modified by the reversal in part by the Court of Appeals, the defendant Gillock was ordered to report to commence his sentence. In this connection, he asked for and received permission to delay reporting in order to finish some courses at a theological seminary in Memphis, Tennessee, where he was preparing for ordination as a minister. He commenced serving his sentence according to the motion on August 5, 1985, and on December 18, 1987, he was placed on parole. On petition to the U.S. Parole Commission, defendant was discharged from parole and supervision on March 22, 1990. On application of the defendant after he was incarcerated, the $10,000 was remitted by the Court based upon his claim of extreme hardship, particularly against his wife, because the IRS was undertaking to collect the taxes which he had been found guilty of not paying with appropriate penalties.

The expungement motion alleges, and the Court accepts as correct, that the defendant completed his education at Memphis Theological Seminary necessary to obtain a M.I.D. Degree, and he has been ordained as a minister in the Cumberland

---

1. Comarda was given immunity and was a main witness in the government's case.

Presbyterian Church. He asserts, and the Court accepts, that he is employed full time as Executive Director of Jail Chaplains of America Fellowship, Inc., a not-for-profit religious corporation which ministers to jail prisoners and their families, of which he is the founder. In addition defendant alleges and the Court accepts, that he serves as a pulpit supply minister in various churches and ministers to many sick and grieving persons.

## WHAT SHOULD BE EXPUNGED AND WHEN?

Black's Law Dictionary defines expunge as follows:

> To blot out; to efface designedly; to obliterate; to strike out wholly.

The meaning of expungement and the source of the authority for courts to consider and grant expungement was explained in *United States v. Doe*, 556 F.2d 391 (6th Cir.1977). That case was brought by an individual who had been sentenced to the since repealed Youth Corrections Act, formerly 18 U.S.C. § 5005 *et seq.* That Act was designed to enhance the probability of rehabilitation of youthful offenders. It contained provisions whereby youthful offenders who were guilty of felonies could in appropriate circumstances be sentenced to a period of incarceration to be followed by probation. If the sentencing court determined that the defendant should be released from his period of probation prior to the date set in the sentence, the judge could grant an unconditional discharge from probation and order that the conviction be set aside. In that instance, the court was also authorized to issue a certificate that the conviction had been set aside.

In *Doe*, the defendant had been discharged from probation and had his conviction set aside with an appropriate certificate issued. The case originated as an application to have the record of his conviction expunged instead of being left in the records with a certificate setting it aside noted.

The Court of Appeals affirmed the district court's denial of the expungement. In doing so, the court held that the Youth Corrections Act did not have a provision which authorized or required expulsion, namely "obliteration of the court record of conviction." The court held that there was no statutory provision for expulsion. The court further recognized that it is within the inherent equitable powers of a federal court to order the expungement of a record in an appropriate case. However, the court determined that there had been no showing in that case of special circumstances which would render the district court's denial of the request for expungement under the inherent power as an abuse of discretion.

This same holding in the matter of the Youth Corrections Act not entitling a youthful offender to expungement is evidenced in *United States v. Stromick*, 710 F.Supp. 613 (D.Md.1989). In that case, the court recognized that there was a split in the circuits on that holding pertaining to the Youth Corrections Act; however, the district judge in Maryland agreed with the Sixth Circuit in *Doe* and noted that it was the majority holding. A reading of the cases reflects that the applications for expungement have been based upon a number of different fact situations. As heretofore indicated, some of the applications have addressed expungement from criminal records ordered by Congress to be kept by the Attorney General through the Federal Bureau of Investigation in 28 U.S.C. § 534(a). These are criminal records which are designed to assist federal, state and local law enforcement agencies in the investigation and prosecution of criminal cases. Those records have been upheld and determined to be valid records in a number of cases. *See Allen v. Webster*, 742 F.2d 153 (4th Cir.1984); *Doe v. Webster*, 606 F.2d 1226 (D.C.Cir.1979). Furthermore, in *United States v. Schnitzer*, 567 F.2d 536 (2d Cir.1977), the court held that it was not necessary to file a separate civil suit and join the Attorney General and Federal Bureau of Investigation in order to have these records included in a suit to expunge under the inherent powers of the court. As heretofore indicated in this ruling, the Court is persuaded that Gillock is not seeking to have merely the FBI rap sheets removed, but a total expungement

of the entire case so that he may consider the record blotted out and cancelled. Therefore, the Court will not consider the statute requiring criminal records to be kept by the Attorney General as being a separate expungement application by Gillock from his application for total expungement of all records including the FBI records.

A reading of the cases which have addressed the inherent power of a court to expunge records reflects that specific standards are difficult to be established. In *Schwab v. Gallas,* 724 F.Supp. 509 (N.D.Ohio 1989), the court summarized some of the basic holdings and cited authorities. He began by noting the inherent power of the federal court as recognized in *United States v. Doe,* which merely stated that the expungement of a record would be authorized in "an appropriate case."

It is further noted that federal courts have utilized this "narrow power" in cases of illegal prosecutions or arrest pursuant to unconstitutional statutes. Others have required a showing of "extraordinary circumstances" and expungement where necessary to vindicate constitutional or statutory rights. The case further held that the fact that the plaintiff Schwab had led a law-abiding life subsequent to his felony conviction did not meet the standard of "an appropriate case." It should be noted that Schwab sought to have expunged the entire record of his felony conviction under 18 U.S.C. § 659 for which he served a suspended sentence and was placed on three years probation. One of the cases cited in the *Schwab* case was *United States v. Stromick, supra.* At 724 F.Supp. at 511, the *Schwab* opinion stated that *Stromick* stood for "(equitable relief might be appropriate if denied security clearance, a specific job opportunity, or materially harmed by presence of criminal record)". As heretofore indicated, *Stromick* was a case in which expungement was denied an applicant who had been sentenced under the former Youth Corrections Act. The court in *Stromick* noted that the fact that the defendant had not accumulated a further criminal record since the set aside was commendable, but it did not warrant the exercise the equitable power of expungement. The court further noted:

If, for example, defendant were to show that he had been denied a security clearance or specific job opportunities, or had otherwise been materially harmed by the presence of criminal records, equitable relief might be appropriate. *Cf. Barnett v. District of Columbia Dept. of Employment Services,* 491 A.2d 1156, 1157–58 (D.C.App.1985).

In a footnote to the opinion, there is an explanation that in *Barnett,* the plaintiff's conviction was expunged on a set aside in an incorrect construction of the Youth Corrections Act for the reasons stated in the text. Therefore this Court concludes that the reference in both *Schwab* and *Stromick* to the examples stated in *Stromick* are theoretical examples of a situations that were never applied.

Another case which offers guidance in undertaking an application of the inherent power of a federal court to expunge a record is *United States v. Schnitzer, supra.* In that case, the court noted that the power to expunge is a narrow one and should not be routinely used whenever there is an acquittal but should be reserved for the unusual or extreme case. The opinion noted at 567 F.2d 540 that some of the extreme circumstances have been found and records ordered expunged where procedures of mass arrest rendered judicial determination of probable cause impossible, where the police misused police records to the detriment of the defendant or where the arrest was proper but was based upon a statute later declared unconstitutional. The opinion also cited *United States v. McLeod,* 385 F.2d 734 (5th Cir.1967). This is one of the two cases that is cited in the motion of Gillock for expungement for the proposition that the law is well established that it is within the equitable powers of federal courts to order expungement of such criminal records; however, the *McLeod* case is entirely different from the fact situation in this case. In *McLeod,* Judge Wisdom of the Fifth Circuit ordered the district court to order officials of Dallas County, Alabama, to return all fines and

expunge from the record all arrests and convictions resulting from prosecutions of various persons for violations of local law obtained for the purpose of intimidating Negro citizens of that county to interfere with their right to vote by discouraging their attempt to register. This was a part of the equitable authority for relief in a civil rights case in the beginning of the Fifth Circuit's large number of cases to correct the long-established deprivation of civil rights.

The *Schnitzer* case has considerable similarity to the *Gillock* case in some facts. Schnitzer was a rabbinical student who had been arrested, indicted, fingerprinted and photographed. He was never convicted and sentenced, because the indictment was dismissed without conceding innocence. The court in denying the right to expungement in that case noted that Schnitzer might be asked to explain his involvement in the arrest, indictment and fingerprinting, but this was not harsh enough to require expungement. The court noted that such explanations may be expected from those about to enter a profession, such as a religious or legal profession.

### REASONS FOR DENYING THE EXPUNGEMENT SOUGHT BY GILLOCK

Paragraphs 8–11 of Gillock's motion provide as follows:

8. The stigma of Defendant's prior criminal conviction has been a hinderance to him in performing his functions as a pastor, minister and counselor dealing with the problems of people who are, have been or will be incarcerated and their families. His ability to secure a pulpit has been hampered as well.

9. Defendant has led an otherwise exemplary life, actively and honorably serving his country in the military and excelling both academically and professionally. He is married and has ten children and ten grandchildren. He is regarded as an extraordinary individual, a devoted son to his elderly mother and a highly respected professional in the religious community.

10. Despite Defendant's compelling efforts to make amends for his past criminal conduct and to pay his debt to society, Defendant is continuously being penalized and prevented from expanding professionally and personally due to the stigma of his criminal record.

11. Now, about nine years after his conviction, Defendant requests this Honorable Court to expunge his prior criminal record because it operates as a barrier to his further professional and individual growth.

█ Based upon the record in this case, the Court is persuaded that if a full evidentiary hearing were had on the above-quoted allegations, the Court would find that they are in part irrelevant to the issues of the motion and are in part inaccurate or untrue. However, for the purpose of ruling on this motion, the Court will accept them as true. Even so, the Court finds that they and the other allegations are not enough to entitle Gillock to an expungement of the criminal record.

After serving his period of incarceration, Gillock was allowed to complete his theological education and obtain an M.I.D. Degree from Memphis Theological Seminary. He was subsequently ordained as a minister in the Cumberland Presbyterian Church and is employed full time as Executive Director of Jail Chaplains of America Fellowship, Inc. Therefore, his conclusory allegations of his ability to secure a pulpit "has been hampered" and his criminal conviction "has been a hinderance to him in performing his functions as a pastor, minister and counselor dealing with the problems of people who are, have been or will be incarcerated and their families" are hardly serious impediments to his professional life. Similarly, his request in paragraph 11 that his record be expunged because "it operates as a barrier to his further professional and individual growth" is a mere inconvenience which certainly does not authorize expungement of this record.

Additionally it should be noted that there are many instances in our society in which various persons and organizations are entitled to know what criminal conduct a per-

son has committed and how he reacted to it. Congress has seen fit to place Gillock in a category where he would be committing another felony if he possessed a firearm. If he is ever indicted again and contends that he did not intend to violate the law, it would be admissible to show that he had been convicted of serious crimes involving dishonesty as like and similar conduct which might bear on his intent. As heretofore indicated, this case has considerable precedential value on legal principles which were determined in the Court of Appeals for the Sixth Circuit and considered at the same time by the Supreme Court of the United States.

Similarly, expungement would remove some of the deterrent phase of the record in the case. While the courts cannot totally prevent crime by a firm and fair handling of criminal cases, it is hoped that the example of defiant, dishonest and untruthful conduct of Gillock as evidenced in the records of this case will cause others to realize that one of the prices for criminal activity is to have to earn a reputation of having overcome the stigma which is justifiably placed upon a criminal by his conduct. In paragraph 18 of the motion, there is the statement that defendant "earnestly believes that this Honorable Court, at the time it imposed sentence upon him, did not intend to forever brand him with the stigma of a conviction for the rest of his natural life." This Court did intend to sentence him as it did and did not intend for his record to be expunged. Any brand that was placed upon him with the stigma of conviction for the rest of his natural life was placed thereon by him, by his deliberate conduct both before and during the trial. The Court expected that he would have to make the same efforts to overcome his deliberate criminal conduct of serious proportions as all others who are similarly sentenced in this Court. If the record were expunged based upon the facts in the record and the application, it would be an injustice to the literally hundreds of defendants who have been sentenced for crimes more and less serious and who have had to earn the respect of society and the persons with whom they deal. Gillock has been afforded many benefits as starters towards that. The theological seminary has shown a willingness to forgive or disregard his criminal activity and his defiant, untruthful attitude. He was allowed by this Court to delay his reporting for his prosecution in order to complete a semester of his theological training. His fine was remitted based upon his appeal for pity because his family was being called upon to make sacrifices due to his misconduct. His rights to citizenship have been restored, and past experience of lawyers who have been convicted and expelled from the practice of law in this Court indicates that he can be reinstated in the practice of law by convincing the appropriate authorities of his rehabilitation.

The record is replete with instances which show that Gillock's pretrial conduct was despicable; that his character was certainly not as exemplary as he now professes it to be; that while he had a favorable reputation with many persons, particularly his constituents as a senator in the state legislature, he also in many quarters had a reputation for dishonesty. He was found guilty of a serious breach of trust to the citizens of this state whom he represented, and he was convicted of a breach of trust to the courts and legal profession after he had taken an oath to support truth and justice in the courts.

Upon the motion for expungement and the opposition thereto filed in behalf of the United States, the entire record in the cause and for the above reasons, this Court hereby denies the motion for expungement of record on the merits.

IT IS SO ORDERED.