# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 04-1917

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

v.

KATHERINE ANN FLOWERS,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Southern District of Illinois.
No. 96-CR-40028-JPG—**J. Phil Gilbert**, *Judge.*

_____

ARGUED SEPTEMBER 29, 2004—DECIDED NOVEMBER 19, 2004

_____

Before CUDAHY, RIPPLE, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* Katherine Ann Flowers success-
fully sought an order from the district court expunging all
records of her criminal conviction kept by the judicial branch
of the government. The government appeals the order.

In 1996, Flowers entered a guilty plea to a one-count
information charging her with a violation of 42 U.S.C.
§ 3631(b)(1) for interfering with housing rights on account
of race. As part of her plea agreement, she stipulated that
she drove two codefendants to and from a house where the
codefendants, while wearing white sheets and hoods, burned
a cross to intimidate a white woman who was associating

with an African-American man. Flowers, who was 18 years old at the time of the crime, was sentenced to one year of probation.

Apparently since the time of this appalling cross-burning incident, Flowers has done constructive things with her life. She attended college, receiving an Associate of Arts degree, and then enrolled at Southern Illinois University, where she received a Bachelor of Science degree in plant and soil science. She has been a member of the Zeigler, Illinois, fire department and has been promoted to the rank of lieutenant. She has achieved certification as a Firefighter II and in hazardous material awareness. She received a first responder/defibrillator license from the Illinois Department of Public Health. Also, she has completed a course of study as a practical nurse and passed her state boards.

She filed her motion in the district court seeking expungement of her criminal record in order to prevent it from limiting her ability to find employment in her field. The United States Attorney's office did not respond to the motion, a fact the district judge interpreted as acquiescence in the relief sought. In fact, the reason the government did not respond was that it did not receive a copy of the filing. In ruling on the motion, the district judge said that he lacked authority to expunge records maintained by the executive branch of the government. However, he ordered expungement of records maintained by the judicial branch:

> [I]n view of Flowers's apparent personal rehabilitation, the Court finds that Flowers's potential employment problems outweigh the public interest in maintaining her judicial records. Further, the Court construes the government's failure to respond to Flowers's motion as an admission that the balancing test weighs in favor of expungement.

Flowers wisely does not appeal from the denial of the motion as it applies to records maintained by the executive

branch. As the district judge recognized, we have previously made clear that federal courts lack jurisdiction to order expungement of such records. In *United States v. Janik*, 10 F.3d 470, 472 (7th Cir. 1993), we said:

> *Diamond [v. United States*, 649 F.2d 496 (7th Cir. 1981),] and *Scruggs [v. United States*, 929 F.2d 305 (7th Cir. 1991),] have produced confusion because *Scruggs* suggests, though it does not hold, that federal courts are without jurisdiction to order any Executive Branch agency, typically the FBI, to expunge records, while *Diamond* completely overlooks the issue of jurisdiction. We resolve that confusion in this case by holding that federal courts are without jurisdiction to order an Executive Branch agency to expunge what are admittedly accurate records of a person's indictment and conviction. We are without statutory or constitutional authority to hold otherwise. In fact, in Section 534, Congress suggested the opposite—that is, in favor of *requiring* the Executive Branch to maintain accurate records of such convictions.

*Janik* established, however, that district courts do have jurisdiction to expunge records maintained by the judicial branch. The test for the expungement of judicial records is a balancing test: "if the dangers of unwarranted adverse consequences to the individual outweigh the public interest in maintenance of the records, then expunction is appropriate." At 472.

Although we have adopted a balancing test, it seems clear that the balance very rarely tips in favor of expungement. Janik had been found guilty of the unlawful possession of two unregistered guns. His conviction was overturned due to a violation of the Speedy Trial Act. Even though his conviction was overturned and he had been rejected for employment because of his record, we found that expungement was not called for. Even more telling is the fact that in *Scruggs*

the defendant was found not guilty of being a felon in possession of a firearm. We nevertheless upheld the denial of his request to expunge his arrest record.

It is fair to say that our view of the balancing test is like that of other courts which have emphasized that expungement is an extraordinary remedy: *Geary v. United States*, 901 F.2d 679 (8th Cir. 1990) (a federal court may exercise its inherent equitable powers to order expungement only where the case presents "extraordinary circumstances"); *United States v. Friesen*, 853 F.2d 816 (10th Cir. 1988) (attorney acquitted on all counts of conspiracy to manufacture cocaine was not automatically entitled to expungement of records); *Livingston v. U.S. Dep't of Justice*, 759 F.2d 74, 78 n.30 (D.C. Cir. 1985) (neither dismissal of complaint nor acquittal, without more, justifies expungement of arrest record); *Allen v. Webster*, 742 F.2d 153, 155 (4th Cir. 1984) (expungement of an arrest record is relief confined to "exceptional circumstances"); and *United States v. Schnitzer*, 567 F.2d 536, 539 (2nd Cir. 1977) (expungement granted only in "extreme circumstances").

The present case convinces us, however, that we need to add content to the balancing test to underline the fact that expungement is, in fact, an extraordinary remedy and that "unwarranted adverse consequences" must be uniquely significant in order to outweigh the strong public interest in maintaining accurate and undoctored records. We will turn first to the second part of the test: the public interest in maintaining accurate records. That interest is strong as evidenced by the statutory admonition found in 28 U.S.C. § 534 which requires the Department of Justice to collect criminal records and make them available to state and local law enforcement agencies. Records relating to a person's criminal conduct are vital tools to law enforcement and are, at least as of today, essential to the computation of sentences under the United States Sentencing Guidelines.

Other evidence of the weight of the public interest can be seen in the long tradition of open proceedings and public records, which is the essence of a democratic society.

To outweigh that interest, "unwarranted adverse consequences" must truly be extraordinary. The phrase does not refer to adverse consequences which attend every arrest and conviction. Those are unfortunate but generally not considered *unwarranted* adverse consequences. It is possible, even likely, that any person with an arrest or conviction record may well be impeded in finding employment. As the Court of Appeals for the Ninth Circuit has stated, if employment problems resulting from a criminal record were "sufficient to outweigh the government's interest in maintaining criminal records, expunction would no longer be the narrow, extraordinary exception, but a generally available remedy." *United States v. Smith*, 940 F.2d 395, 396 (9th Cir. 1991).

Just what sort of consequence might be "unwarranted" and of significance sufficient to outweigh the public interest in the maintenance of records is somewhat difficult to predict. One clear example is found in *United States v. McLeod*, 385 F.2d 734 (5th Cir. 1967). The case arose out of a voter registration drive in Selma, Alabama, in 1963. The judge found that there was a pattern of harassment (including arrests on minor charges) carried out by the authorities of Dallas County to intimidate African-American citizens from registering to vote. After laying out the "chilling effect" that the "pattern of baseless arrests and prosecutions revealed," the judge found that in order to grant relief it was necessary to put the persons arrested in the position they would have had, were it not for the arrests. At 741. While there is no specific mention in this vintage case of the presently accepted balancing test, the reasoning was that "[s]etting aside a few criminal convictions is far less disruptive of the normal functioning of state government

than is the voiding of an election." At 749. It is not hard to see why the situation in Selma could be considered extraordinary.[1]

In contrast, the case before us, although it involves a crime that is thankfully not routine, concerns no more than a routine, valid criminal conviction with the usual attendant consequences. For that reason, we find that granting expungement to Flowers was an abuse of the district court's discretion. Her motion filed in the district court set out her accomplishments since the time of her conviction and statements from her presentencing report: (1) that at the time of the offense her codefendant told her that if she did not drive to the scene of the crime, he would tell her parents she had been drinking; (2) that she had affirmatively accepted responsibility for her actions; (3) that she had no previous criminal history; and (4) that she had a minor role in the offense. She stated that she was remorseful. There is nothing truly extraordinary about these factors. In granting the motion, the district court distinguished Flowers' case from *Janik*, saying that her "crime was far less serious than Janik's and did not even subject her to a term of imprisonment." It is true that her sentence was less than Janik's but, even were we to somehow assume that the length of the sentence is relevant to expungement, many factors, other than the seriousness of the crime, figure into the sentencing calculation. For example, Flowers had no prior record and entered a plea agreement under which she cooperated with the government. We are also not convinced that Flowers' crime was not serious. It was, perhaps, even more serious than Janik's.

Turning specifically to the balancing test, we note that as to the adverse consequences, Flowers does not provide any

---

[1] We note that we mention this case merely to show what might make a consequence of an arrest unwarranted, not to comment on the court's exercise of jurisdiction over state arrest records.

evidence of the actual loss of employment opportunities. She merely says that she "fears that if her records in this matter are not expunged, it will seriously limit her ability to find employment in her field." That speculative consequence cannot outweigh the public interest in maintaining the accuracy of judicial records.

On that point, as we stated, the district court construed the government's failure to respond to the motion as "an admission that the balancing test weighs in favor of expungement." The government's motion to reconsider the issue, filed after it learned about the order expunging the record, belies that assumption. There is nothing in this record sufficient to support Flowers' request. The order of the district court is REVERSED, and the court records in this case—both here and in the district court—are unsealed. The case is remanded to the district court where an order dismissing Flowers' petition should be issued.

A true Copy:

      Teste:

                      _____
                      *Clerk of the United States Court of*
                              *Appeals for the Seventh Circuit*