**UNITED STATES of America**

v.

**Peter Don TYLER.**

**Case No. 6:08–cr–49–Orl–28DAB.**

United States District Court,
M.D. Florida,
Orlando Division.

Nov. 24, 2009.

---

Daniel C. Irick, U.S. Attorney's Office, Orlando, FL, for Plaintiff.

## ORDER

JOHN ANTOON II, District Judge.

In June 2008, the United States filed a three-count Indictment (Doc. 1) against Peter Don Tyler for alleged misconduct in his dealings with the Social Security Administration. Count One of the Indictment charged that Tyler made a false statement on his application for social security benefits.[1] Count Two charged that

Tyler failed to disclose information to the Social Security Administration pertaining to his entitlement to benefits,[2] and Count Three charged Tyler with theft of social security benefits.[3] Prior to trial, the Government dismissed Counts Two and Three of the Indictment. The case proceeded to jury trial on Count One and the jury returned a verdict of not guilty.

Before the Court is Tyler's Motion to Expunge (Doc. 44) all records pertaining to his criminal charges. In his motion, Tyler does not challenge the legality of his arrest but instead complains that even though he was not convicted of a crime, the existence of arrest records interferes with his ability to gain employment. On this equitable ground alone, Tyler seeks expungement. There is no authority, however, for this Court to order expungement of records, and the motion must therefore be denied.

Tyler's request for relief is burdened by the fact that there is no federal statute that provides for the expungement of records of arrest and prosecution even when the person arrested is later determined to be not guilty. Unlike many state legislatures, Congress has not enacted legislation providing for the expungement of criminal records.[4] In the absence of a federal statute, the circuits have been divided as to whether a district court has jurisdiction to grant such relief based on equitable considerations.

The Second, Tenth, and D.C. Circuits[5] have determined that district courts have

---

1. 18 U.S.C. § 1001 (2006).

2. 42 U.S.C. § 1383a (2006).

3. 18 U.S.C. § 641 (2006).

4. *See. e.g.,* Ala.Code § 41–9–646 (2009) (offering the remedy of expungement for criminal records found by the court "to be inaccurate, incomplete or misleading"); Fla. Stat. § 943.0585 (2009) (allowing a court of competent jurisdiction to order the expunction of

a criminal history record of a minor or adult who complies with the statutory procedural requirements and where the criminal history record does not relate to specific violations delineated by statute).

5. The Seventh Circuit has held that while courts do not have jurisdiction to expunge executive records, criminal records held by the judicial branch may be expunged " 'if the dangers of unwarranted adverse conse-

jurisdiction to grant expungement solely on equitable grounds. *See, e.g., United States v. Schnitzer*, 567 F.2d 536, 539 (2d Cir.1977) ("[E]xpungement lies within the equitable discretion of the court, and relief usually is granted only in extreme circumstances." (internal quotation omitted)); *United States v. Linn*, 513 F.2d 925, 927 (10th Cir.1975) (finding that extreme or unusual cases "call for a 'balancing' of the equities between the Government's need to maintain extensive records in order to aid in general law enforcement and the individual's right to privacy"); *Livingston v. U.S. Dep't of Justice*, 759 F.2d 74, 78 (D.C.Cir.1985) (reiterating, as "well established," the rule "that courts have the inherent, equitable power to expunge arrest records" when necessary "to preserve basic legal rights").[6] These decisions authorizing the expungement of criminal records are based on the view that district courts have jurisdiction ancillary to and derivative of their original jurisdiction[7]; that is, once a court has acquired original jurisdiction, it may invoke ancillary jurisdiction to dispose of "other related matters which it could not consider were they independently presented." *See United States v. Dunegan*, 251 F.3d 477, 478–79 (3d Cir.2001). Under this concept of ancillary jurisdiction, a court could use its inherent power to expunge records.

In 1994, the Supreme Court decided *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), explaining the limited reach of ancillary jurisdiction. The Court determined that federal courts do not have jurisdiction to enforce settlement agreements reached in cases that they have dismissed unless they have retained jurisdiction to do so or "there is some independent basis for federal jurisdiction." *Id.* at 381–82, 114 S.Ct. 1673. In reaching that conclusion, the *Kokkonen* Court rejected the respondent's contention that the doctrine of ancillary jurisdiction supported federal court enforcement of settlement agreements, noting that historically it had

---

quences to the individual outweigh the public interest in maintenance of the records.' " *United States v. Flowers*, 389 F.3d 737, 739 (7th Cir.2004) (quoting *United States v. Janik*, 10 F.3d 470, 472 (7th Cir.1993)).

**6.** The Fifth Circuit has also recognized that courts have the power to order expungement of records, but it has emphasized that such action is permissible only in very limited circumstances. *See, e.g., Sealed Appellant v. Sealed Appellee*, 130 F.3d 695, 698–99 (5th Cir.1997) (noting that "courts—not legislatures—have historically crafted remedies" and that "[i]n order to have standing to seek expungement, the party seeking expungement against executive agencies must assert an affirmative rights violation by the executive actors holding the records"); *Rogers v. Slaughter*, 469 F.2d 1084, 1085 (5th Cir. 1972) (noting that the privilege of courts "to expunge matters of public record is one of exceedingly narrow scope" and vacating, on public policy grounds, portion of district court order that related to expungement); *United States v. McLeod*, 385 F.2d 734, 747–

50 (5th Cir.1967) (remanding with instructions to district court to order expungement of state criminal records of African–Americans who were arrested by state law enforcement officers to prevent them from exercising their constitutional right to vote, relying on federal statute proscribing interference with that right).

Additionally, some district courts have expressed confidence that they are vested with an inherent power to expunge criminal records if required by equity to do so. *See, e.g., United States v. Rabadi*, 889 F.Supp. 757, 759 (S.D.N.Y.1995) ("[I]t is well-established that federal courts may, through the exercise of their inherent equitable powers, order the expungement of criminal records."); *Schwab v. Gallas*, 724 F.Supp. 509, 510 (N.D.Ohio 1989) ("[T]he remedy of expungement invokes a federal court's equitable jurisdiction.").

**7.** A district court has original jurisdiction of cases involving charges of violations of the criminal laws of the United States. 18 U.S.C. § 3231 (2006).

asserted ancillary jurisdiction for only two purposes: "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id.* at 379–80, 114 S.Ct. 1673 (citations omitted).

In light of *Kokkonen*, the continued viability of approving expungement on the basis of equitable considerations has been examined by several appellate courts. In *United States v. Coloian*, 480 F.3d 47, 52 (1st Cir.2007), the First Circuit joined the Third, Eighth, and Ninth Circuits in concluding that a request for expungement does not serve the limited purposes necessary for invocation of ancillary jurisdiction and that equitable considerations standing alone are not sufficient to support jurisdiction over such a request. *Accord Dunegan*, 251 F.3d at 480 (holding that "in the absence of any applicable statute enacted by Congress, or an allegation that the criminal proceedings were invalid or illegal, a District Court does not have the jurisdiction to expunge a criminal record, even when ending in an acquittal"); *United States v. Meyer*, 439 F.3d 855, 859–60 (8th Cir.2006) ("In light of the Supreme Court's instruction narrowing the scope of ancillary jurisdiction in [*Kokkonen*], we are convinced that a district court does not have ancillary jurisdiction to expunge a criminal record based solely on equitable grounds." (footnote omitted)); *United States v. Sumner*, 226 F.3d 1005, 1014–15 (9th Cir.2000) (holding that "[t]he power to expunge a record of a valid arrest and conviction on equitable grounds must be declared by Congress" and that the purposes justifying the exercise of ancillary jurisdiction announced in *Kokkonen* are not met in an action seeking expungement of criminal records on equitable considerations alone).

In the absence of statutory authority or a post-*Kokkonen* opinion from the Eleventh Circuit suggesting that a district court has jurisdiction to expunge criminal records, the reasoning of those courts finding to the contrary is persuasive. This Court concludes that it is without authority to expunge Tyler's arrest records based solely on equitable considerations.[8] Accordingly, Tyler's Motion to Expunge (Doc. 44) is denied.

---

8. Because judicial expungement of criminal records implicates the separation of powers doctrine, Congress should consider enacting legislation allowing relief in limited circumstances. The Executive Branch almost always has a legitimate interest in maintaining arrest records, even when the charges are dismissed or the defendant is ultimately determined not guilty. After all, the burden of proof in a criminal case is far greater than that for probable cause for arrest. Notwithstanding the legitimacy of the Executive Branch's interest in maintaining accurate arrest records, there is a question as to the value in creating a permanent stigma for a wrongfully accused defendant, the likely results of which will be permanent removal from a level playing field of future employment opportunities. And, certainly any interest the Executive Branch could have in maintaining the records of illegally procured arrests would be minimal at best and outweighed by adverse consequences to the innocent defendant.