In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-2094

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RAKESH WAHI,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 11-CR-30043 — **Sue E. Myerscough**, *Judge.*

ARGUED FEBRUARY 10, 2016 — DECIDED MARCH 2, 2017

Before BAUER, FLAUM, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Circuit precedent holds that a district court has inherent authority to reopen a closed criminal case to consider a request to expunge the judicial record based on an equitable balancing test that weighs the public and private interests at stake. *See United States v. Flowers*, 389 F.3d 737, 739 (7th Cir. 2004); *United States v. Janik*, 10 F.3d 470, 472 (7th Cir. 1993). We're asked to decide whether this precedent is sound in light of *Kokkonen v. Guardian Life Insurance Co. of*

*America*, 511 U.S. 375 (1994). *Kokkonen* clarified that ancillary jurisdiction exists for two limited purposes: (1) to permit claims that are factually interdependent to be resolved in a single proceeding; and (2) to enable the court to "manage its proceedings, vindicate its authority, and effectuate its decrees." *Id.* at 380.

Ancillary jurisdiction is the formal name for the inherent power recognized in *Flowers* and *Janik*. But a petition for equitable expungement satisfies neither of *Kokkonen*'s criteria for the assertion of ancillary jurisdiction. Because *Flowers* and *Janik* cannot be reconciled with *Kokkonen*, they are overruled.[1] This holding brings our circuit into conformity with a growing appellate consensus: Every circuit that has specifically addressed this question in light of *Kokkonen* has held that the district court lacks ancillary jurisdiction to hear requests for equitable expungement. *Doe v. United States*, 833 F.3d 192, 199 (2d Cir. 2016); *United States v. Field*, 756 F.3d 911, 916 (6th Cir. 2014); *United States v. Coloian*, 480 F.3d 47, 52 (1st Cir. 2007); *United States v. Meyer*, 439 F.3d 855, 859–60 (8th Cir. 2006); *United States v. Dunegan*, 251 F.3d 477, 479 (3d Cir. 2001); *United States v. Sumner*, 226 F.3d 1005, 1014 (9th Cir. 2000). These decisions recognize that expungement authority is not inherent but instead must be grounded in a jurisdictional source found in the Constitution or statutes.

Here, however, the district judge was bound by existing circuit precedent. She acknowledged the force of *Kokkonen*

---

[1] Because this opinion overrules circuit precedent, we have circulated it to all judges in active service in accordance with Circuit Rule 40(e). No judge voted to hear the case en banc.

but nonetheless took jurisdiction over Rakesh Wahi's expungement petition, weighed the equities under the balancing test approved in *Flowers* and *Janik*, and concluded that his circumstances did not warrant expungement. We vacate that decision and remand with instructions to dismiss the petition for lack of jurisdiction.

## I. Background

Drs. Gautam Gupta and Rakesh Wahi operated nutrition clinics throughout Illinois. In 2011 they were indicted on charges of mail fraud, healthcare fraud, and conspiracy to defraud Medicaid, private insurers, and their patients. Gupta fled the country, but Wahi faced the charges. After more than a year of pretrial proceedings, the government learned that during the execution of a search warrant for electronic records, an FBI Special Agent had inadvertently accessed emails that might have contained communications covered by the attorney-client privilege. A prosecutor advised the court that although the breach was "likely minimal and unintentional," it was "impossible at this stage" to determine whether the agent's access to privileged communications had "spread in any manner to others on the prosecution team."

Because the prejudice to Wahi's case was unknown, the government moved to dismiss the indictment. The judge granted the motion, dismissed the indictment, and ordered the government to file all discovery materials with the clerk under seal. The judge retained jurisdiction for the limited purpose of monitoring the government's compliance with the turnover order. The government promptly complied and the case was closed.

More than two years later, Wahi filed a pro se petition for
expungement of the judicial and FBI records related to his
case.[2] He alleged that the public information about the case
was inhibiting his ability to obtain employment in the
medical profession commensurate with his education and
experience. Relying on *Kokkonen*, the government resisted
the petition on jurisdictional grounds. In light of circuit
precedent, however, the government also addressed the
petition on the merits, arguing that Wahi's circumstances
didn't warrant the exceptional remedy of expungement.

The judge approached Wahi's petition in two steps. First,
she acknowledged that our caselaw—namely, *Flowers* and
*Janik*—supports jurisdiction over requests to expunge *judicial*
records but *not* records maintained by the executive branch.
*Flowers*, 389 F.3d at 738–39; *Janik*, 10 F.3d at 472. She also
acknowledged that *Flowers* and *Janik* may be on shaky
ground under *Kokkonen*. Bound by circuit precedent, howev-
er, the judge proceeded to the merits, but only to the extent
that Wahi sought expungement of the judicial records in his
case; she did not take jurisdiction over his request to ex-
punge FBI records.[3] In the second step, the judge held a
hearing, applied the balancing test described in *Flowers* and
*Janik*, and concluded that Wahi's circumstances did not
justify the extraordinary remedy of expungement.

---

[2] To be clear, Wahi sought expungement of the publicly available FBI
records in his case (i.e., records regarding his arrest and indictment). He
did not seek expungement of the FBI's nonpublic files.

[3] Wahi has abandoned his quest to expunge FBI records; he does not
challenge the judge's refusal to take jurisdiction over this aspect of his
expungement petition.

Wahi appealed, initially representing himself, as he had in the district court. After briefing was completed, however, counsel appeared on his behalf and sought leave to file a supplemental brief. We granted the motion and also allowed the government an opportunity to respond. So we have the benefit of counseled adversarial briefing on both the jurisdictional and merits questions. As we'll explain, our cases regarding the district court's inherent power to expunge judicial records are inconsistent with *Kokkonen* and thus require reconsideration.

## II. Analysis

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen*, 511 U.S. at 377 (citations omitted). We begin our analysis by noting what is probably obvious: The district court's statutory original criminal jurisdiction cannot support Wahi's petition for expungement. *See* 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction … of all offenses against the laws of the United States."). The charges against Wahi had long since been dismissed when he filed his petition; the entry of final judgment in the case ended the court's § 3231 jurisdiction.

A handful of statutes give the court expungement authority, but only for certain types of records and in special classes of cases not relevant here. *See, e.g.*, 10 U.S.C. § 1565(e) (requiring expungement of DNA records if a military conviction is overturned); 42 U.S.C. § 14132(d) (allowing expungement of FBI DNA records if a conviction is overturned); 18 U.S.C. § 3607(c) (permitting expungement motions in certain drug-possession cases). No statute vests the court

with the general power to expunge the judicial record of a criminal case on purely equitable grounds.

That leaves ancillary jurisdiction as the only possible source of jurisdiction for Wahi's expungement petition. The term "ancillary jurisdiction" refers to the court's power to hear claims that are closely linked to other claims over which the court's jurisdiction is otherwise secure. As the Supreme Court explained in *Kokkonen*, the doctrine holds that the federal courts have a limited inherent authority to assert jurisdiction "over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." 511 U.S. at 378.

The precise question in *Kokkonen* was whether the doctrine of ancillary jurisdiction authorized a district court to hear a postjudgment motion to enforce a settlement agreement when the court's dismissal order neither incorporated the agreement's terms nor reserved jurisdiction to enforce it. *Id.* at 376–77. The original lawsuit in *Kokkonen* was filed in state court, alleged only state-law claims, and was removed to federal court on the basis of diversity jurisdiction. *Id.* at 376. The parties eventually settled the case, and the district judge entered an order of dismissal that made no mention of the settlement agreement. *Id.* at 377. When a dispute arose over one party's compliance with its obligations under the agreement, the counterparty returned to court and asked the judge to enforce the agreement. Relying on "inherent power," the district judge issued an order of enforcement, and the Ninth Circuit affirmed. *Id.*

The Supreme Court reversed, *id.* at 382, observing that a motion to enforce a settlement agreement "requires its own basis for jurisdiction," *id.* at 378. The district court's invoca-

tion of "inherent power" could only have been understood as a reference to ancillary jurisdiction. The Court explained that this form of jurisdiction exists for "two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id.* at 379–80 (citations omitted).

"Neither of these heads," the Court said, "supports the present assertion of jurisdiction." *Id.* at 380. First, the facts of the original suit and the facts of a claim for breach of the settlement agreement "have nothing to do with each other; it would neither be necessary nor even particularly efficient that they be adjudicated together." *Id.* Second, the power to adjudicate an alleged breach of a settlement agreement "is quite remote from what courts require in order to perform their functions." *Id.* The judgment in the underlying case consisted of a simple dismissal order, "a disposition that is in no way flouted or imperiled by the alleged breach of the settlement agreement." *Id.* Instead, the postjudgment dispute was a garden-variety contract claim. The facts to be determined in a claim for breach of a settlement agreement "are quite separate from the facts to be determined in the principal suit, and automatic jurisdiction over such contracts is in no way essential to the conduct of federal-court business." *Id.* at 381.

The case would be "quite different," the Court observed, if the dismissal order had retained jurisdiction to enforce the settlement agreement or incorporated its terms. *Id.* "In that event, a breach of the agreement would be a violation of the

order, and ancillary jurisdiction to enforce the agreement would therefore exist." *Id.* But the dismissal order in *Kokkonen*—written by the parties themselves—did neither of these things, and "[a]bsent such action, … enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction." *Id.* at 382.

*Kokkonen*'s clarification of the permissible scope of ancillary jurisdiction requires us to revisit *Flowers* and *Janik*, our equitable-expungement cases. Like the lower courts' assertion of jurisdiction in *Kokkonen*, our treatment of jurisdiction in these opinions rests on unexamined assumptions about the district court's inherent authority.

*Flowers* is our most recent opinion on the subject; it postdates *Kokkonen* but does not mention the case. Indeed, *Flowers* skims over the jurisdictional question without much discussion at all, simply citing *Janik* for the proposition that although district courts lack jurisdiction to expunge executive-branch records, the "district courts do have jurisdiction to expunge records maintained by the judicial branch." 389 F.3d at 738–39. Beyond that, *Flowers* is silent on the jurisdictional issue; the rest of the opinion is devoted to the balancing test for equitable expungement. *Id.* at 739–40. Relying again on *Janik*, *Flower*s explains that "[t]he test for the expungement of judicial records is a balancing test: 'if the dangers of unwarranted adverse consequences to the individual outweigh the public interest in maintenance of the records, then expunction is appropriate.'" *Id.* at 739 (quoting *Janik*, 10 F.3d at 472). But *Flowers* added a thumb on the scale: The court held that because the public has a strong interest in maintaining "accurate and undoctored records," the balance "very rarely tips in favor of expungement." *Id.*

*Janik*, for its part, draws on two earlier cases—*Scruggs v. United States*, 929 F.2d 305 (7th Cir. 1991), and *Diamond v. United States*, 649 F.2d 496 (7th Cir. 1981)—neither of which directly addresses the court's authority to expunge judicial records. *Scruggs* involved a request to expunge an *arrest* record; we explained that no statute authorized the district court to expunge arrest records, and "even if" the court had the authority to do so, the district judge had not abused his discretion in declining the request. 929 F.2d at 307.

Along the way to this holding, *Scruggs* clarified that while "some cases" (including our own circuit's decision in *Diamond*) contain loose language about the district court's "inherent powers to obliterate arrest records," the court's inherent authority actually doesn't reach that far. *Id.* at 306. Whatever else might be said about the scope of inherent power, it is plainly limited to "the management of *judicial* business" and does not include "supervisory powers over the behavior of the Executive Branch of the government." *Id.* This part of *Scruggs* is in significant tension with *Diamond*, which authorized district judges to expunge arrest records using a case-specific balancing test without ever addressing the source of the court's authority over records held by the executive branch. 649 F.2d at 499. Although *Scruggs* noted this flaw in *Diamond*, the case remains on the books, and the balancing test it approved is carried forward to *Janik* and *Flowers*. And again, neither *Scruggs* nor *Diamond* has anything to say about the source of the court's authority to expunge *judicial* records.

It should be clear from this brief survey that *Flowers* and *Janik* are built on a weak foundation, resting as they do on a series of unexplained assertions—what we've described

elsewhere as "the judicial equivalent of a rumor chain." *Thomas v. Clements*, 797 F.3d 445, 448 (7th Cir. 2015). Perhaps it goes too far to characterize them as "drive-by jurisdictional rulings" lacking in any precedential effect whatsoever. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998); *see also Magruder v. Fid. Brokerage Servs. LLC*, 818 F.3d 285, 289 (7th Cir. 2016) ("[A]n unreasoned assertion of jurisdiction lacks precedential value."). Still, there is good reason to revisit the jurisdictional issue that both decisions treated so perfunctorily. Neither opinion addresses the effect of the Supreme Court's decision in *Kokkonen*. (*Janik* predates it; *Flowers* overlooks it.) When an intervening Supreme Court decision unsettles our precedent, it is the ruling of the Court that sits on 1 First Street that must carry the day. *See De Leon Castellanos v. Holder*, 652 F.3d 762, 765 (7th Cir. 2011); *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004).

Starting afresh and applying *Kokkonen*, we now conclude that the district court's ancillary jurisdiction does not stretch so far as to permit the assertion of jurisdiction over a petition to expunge the judicial record in a criminal case on purely equitable grounds. First, a request for equitable expungement is not factually dependent on the underlying criminal case in any sense that matters. Instead, it will always turn on facts collateral to or arising after the case is over—in short, matters external to the criminal case itself. For example, here Wahi alleges that he has been unable to secure professional employment because of the reputational taint associated with the public record of his indictment and arrest. In another case a defendant might claim that his postjudgment good behavior justifies expungement. Other scenarios can be imagined. The material point is that expungement based on

an equitable balancing test that weighs the public and private interests in maintaining the judicial record is a wholly collateral inquiry based on new facts and, frankly, a policy choice. As such, it is not incidental to anything properly before the court and "requires its own basis for jurisdiction." *Kokkonen*, 511 U.S. at 378.

Second, the power to expunge judicial records on equitable grounds is not incidental to the court's ability to function successfully *as a court*. Equitable expungement is not needed to enable the court to "manage its proceedings" for the simple reason that the criminal proceedings are over. *Id.* at 380. Nor is expungement authority needed to enable the court to "vindicate its authority" or "effectuate its decrees." *Id.* Expungement is not a remedial tool to enforce a ruling in the underlying criminal case. In short, equitable expungement "is in no way essential to the conduct of federal-court business." *Id.* at 381.

Properly understood, then, ancillary jurisdiction does *not* include a general equitable power to expunge judicial records in a criminal case. Expungement authority must instead have a source in the Constitution or statutes. In light of *Kokkonen*, *Flowers* and *Janik* are overruled. To the extent that any language in *Scruggs* or *Diamond* suggests that the district court has inherent power to order expungement of judicial records, that language is withdrawn.

With this holding we join five of our sister circuits, each of which has read *Kokkonen* to preclude the assertion of ancillary jurisdiction over a request to expunge judicial records on purely equitable grounds. *See Doe*, 833 F.3d at 199; *Field*, 756 F.3d at 916; *Coloian*, 480 F.3d at 52; *Meyer*, 439 F.3d at 859–60; *Dunegan*, 251 F.3d at 479; *Sumner*,

226 F.3d at 1014. No circuit has rejected this understanding of *Kokkonen*. Our status as an outlier is another compelling reason to overrule. *See Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 915 (7th Cir. 2009) (explaining that circuit precedent may justifiably be overruled "when our position remains a minority one among other circuits [or] when the Supreme Court issues a decision on an analogous issue that compels us to reconsider our position") (citation omitted).

Here, the district judge faithfully followed existing circuit precedent, as she was required to do, and denied Wahi's expungement petition on the merits using the balancing test approved in *Flowers* and *Janik*. We VACATE that decision and REMAND with instructions to dismiss for lack of jurisdiction.